# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF INDIANA
### HAMMOND DIVISION

FIFTH THIRD BANK,                      )
      Plaintiff,                      )
                                          )
v.                                     )     CAUSE NO.: 2:11-CV-233-PPS-PRC
                                          )
DOUBLE TREE LAKE ESTATES, LLC,         )
DOUBLETREE GOLF, LLC, DBL              )
RESIDENTIAL, L.P., KENNETH             )
MATNEY, ANTHONY MEYER, and             )
RANDALL MINAS,                         )
      Defendants.                     )
_____ )
                                          )
ANTHONY MEYER,                         )
      Counter-Plaintiff,              )
                                          )
v.                                     )
                                          )
FIFTH THIRD BANK,                      )
      Counter-Defendant.              )

## OPINION AND ORDER

This matter is before the Court on Anthony Meyer's Motion for Leave to File Amended Counterclaim Against Fifth Third Bank [DE 133], filed by Defendant Anthony Meyer on September 11, 2012, and on Plaintiff Fifth Third Bank's Motion to Strike Defendant Anthony Meyer's Reply in Support of Motion for Leave to File Amended Counterclaim [DE 140], filed by Plaintiff Fifth Third Bank ("Fifth Third") on October 13, 2012.  Both motions are fully briefed and ripe for review.

## PROCEDURAL AND FACTUAL BACKGROUND

This litigation stems from a loan agreement between Fifth Third and Double Tree Lake Estates LLC ("Double Tree"), under which Fifth Third made various loans to Double Tree.  Double Tree used the proceeds of those loans to purchase and continue developing an existing residential

community, Double Tree Lake Estates ("the development"). The loans were personally guaranteed by Meyer, Kenneth Matney, and Randall Minas.

Fifth Third initiated this cause of action on June 29, 2011, when the lot sales allegedly slowed to a pace insufficient to service the indebtedness on the development.

Fifth Third amended its Complaint in February 2012. Defendant Meyer filed his Counterclaim against Fifth Third on March 5, 2012, alleging three counts: Breach of Good Faith and Fair Dealing (Count I), Tortious Interference with Meyer's Settlement Agreement and Meyer's Economic and Business Relationships (Count II), and Civil Conspiracy (Count III).

On March 26, 2012, Fifth Third filed its Answer to Meyer's Counterclaim.

On May 31, 2012, Fifth Third filed a Motion for Summary Judgment on its Amended Complaint.

On July 27, 2012, the parties filed a joint motion to stay the case pending the outcome of mediation. On August 16, 2012, the Court stayed this matter, including discovery, pending the outcome of scheduled mediation. However, on August 29, 2012, the parties filed a Motion to Establish Case Management Deadlines, which informed the Court that the parties had not concluded mediation but nevertheless asked the Court to adopt case management deadlines. Therein, Fifth Third also asked to withdraw the pending Motion for Summary Judgment.

On September 4, 2012, the Court granted the parties' requests, withdrawing the Motion for Summary Judgment, setting case management deadlines, and granting Meyer up to and including September 11, 2012, in which to file a Motion for Leave to File Amended Counterclaim.

Meyer filed the instant Motion for Leave to File Amended Counterclaim on September 11, 2012. Fifth Third filed a response on September 27, 2012, and Meyer filed a reply on October 9, 2012.

On October 13, 2012, Fifth Third filed the instant Plaintiff Fifth Third Bank's Motion to Strike Defendant Anthony Meyer's Reply in Support of Motion for Leave to File Amended Counterclaim. Meyer filed a response on November 13, 2012, and Fifth Third filed a reply on November 26, 2012.

Although Meyer does not list legal theories or identify counts in his proposed Amended Counterclaim, based on the parties' briefing, it appears that Meyer is alleging claims of breach of contract, constructive fraud, negligence, and tortious interference with contractual relations on the part of Fifth Third as it pertains to Meyer.

Meyer alleges in the proposed Amended Counterclaim that, in 2003, Matney was presented with an opportunity to purchase the Double Tree Lake Estates development of approximately 600 acres from David Lasco. Because Matney did not have the financial wherewithal to purchase the development outright, Matney put together a joint venture that included himself, Meyer, Minas, and Fifth Third, which Meyer refers to as the "Double Tree Enterprise."

Meyer alleges that, pursuant to the formal documents, Fifth Third was a lender and not an owner; however, the true substance of Fifth Third's conduct, accompanied by the special relationship of trust and confidence that existed between Fifth Third through its officers, employees, and agents on one hand and Meyer, Matney, and Minas on the other, rendered the venture a joint venture among Fifth Third, Meyer, Matney, and Minas. The day-to-day operations of the

development were to be managed by Meyer and Matney. Fifth Third and Minas were to provide initial capital and strategic business advice.

Meyer alleges that, in form and operation, the ownership arrangement of the development became: (a) Meyer and Matney through the entity by the name KA Enterprises, LLC; (b) Minas through Sanim Management Company LLC, owner and manager of MDRM LLC; and (3) Fifth Third through various loan agreements and contracts among the parties, including a Subordination Agreement between Matney, Lasco, and Fifth Third.

Meyer alleges that Fifth Third intentionally excluded Meyer from any meaningful participation in the management of the Double Tree Enterprise. Meyer alleges that Fifth Third participated in the drafting of a proposed Third Amendment to the Double Tree Operating Agreement that would have divested Meyer of all control and profits of the Double Tree Enterprise. He alleges that Fifth Third colluded with Minas to attempt to obtain enforcement of the proposed unsigned Third Amendment to the Double Tree Operating Agreement through an arbitration process. Attorney Terrill D. Albright became the arbitrator and, after a hearing, ordered enforcement of the unsigned and unconsented proposed Third Amendment to the Double Tree Operating Agreement. Later, following the arbitration hearing and the summer 2008 arbitration ruling, it was discovered that Attorney Albright had failed to disclose that his law firm had represented Fifth Third in numerous matters. Meyer alleges that Albright would have been disqualified had this fact been previously known. Meyer alleges that, although attorneys for Minas in conjunction with Fifth Third had attempted to get the arbitrator's proposed order entered of record by Lake Superior Court Judge John R. Pera, Judge Pera entered an order on October 16, 2008, staying the arbitration award.

Meyer alleges that, despite Judge Pera's order, Fifth Third has continued to rely upon and utilize the unsigned Third Amendment to the Double Tree Operating Agreement, in part through a series of attorney opinion letters from various attorneys working for Minas. Meyer alleges that Fifth Third, in conjunction with the active participation of Minas, has continued to allow an increase to the global debt limit of this joint venture over the objection of the other owners, including Meyer. He alleges that Fifth Third and Minas have allowed the removal of assets from the joint venture in the form of disbursements made directly to Minas, his attorneys, his accountants, his affiliates, and office staff at the Double Tree subdivision.

Meyer alleges that Fifth Third, in conjunction with and in direct collusion with Minas and his affiliated entities, including but not limited to MDRM, LLC; FKAT Properties, LLC; Inverness Estates, LLC; City Securities Corporation; and Sanim Management LLC, entered into a series of at least nine additional loan transactions, amendments, modifications and/or restatements after having locked Meyer out of the management and operations of the Double Tree Enterprise. All these actions were allegedly undertaken with no prior notice to Meyer of the additional debt or the use to which debt loan proceeds were being applied. Meyer alleges that Fifth Third did not provide full disclosure or documentation, all while attempting to make all of the new loans retroactive to May 2004.

Meyer alleges that Fifth Third failed to timely and meaningfully notify and inform Meyer of Fifth Third's intentions to enter into various new agreements to increase Double Tree and Minas' global borrowing limits, which allowed for increases in the amounts of debt accumulated by Minas and Double Tree, all of which resulted in additional fees and profits for Fifth Third but additional unwanted and unknown financial risk for Meyer. He alleges that Fifth Third misrepresented the

scope and duration of Meyer's Personal Guaranty of the Double Tree Enterprise bank debt obligations by informing him that the bank loans were term loans and would require a new personal guaranty upon renewal. Instead, Fifth Third and Minas attempted to make all subsequent loan obligations retroactive to the detriment of Meyer.

On July 31, 2009, Meyer and Minas (and his affiliated entities) entered into a Settlement Agreement.

Meyer alleges that, on March 5, 2010, Fifth Third extended an illusory offer to effectuate the Settlement Agreement by providing funding to Minas for the cash payment required in the Settlement Agreement and by approving the lot transfers called for in the Settlement Agreement, which offer was accepted by Meyer on March 8, 2010. Meyer alleges that Fifth Third has breached this Agreement by failing to perform all of its contractual obligations or by placing itself in a position in which it is unable to perform its obligations.

## ANALYSIS

Federal Rule of Civil Procedure 15 governs amendments to pleadings and provides, in part:

(1) Amending as a Matter of Course. A party may amend its pleading once as a matter of course within:
    (A) 21 days after serving it, or
    (B) if the pleading is one to which a responsive pleading is required, 21 days after service of a responsive pleading or 21 days after service of a motion under Rule 12(b), (e), or (f), whichever is earlier.
(2) Other Amendments. In all other cases, a party may amend its pleading only with the opposing party's written consent or the court's leave. The court should freely give leave when justice so requires.

Fed. R. Civ. P. 15(a). Because the time for Meyer to amend his pleading as a matter of course has expired, Meyer seeks leave of Court to file the proposed Amended Counterclaim. The decision

whether to grant or deny a motion to amend lies within the sound discretion of the district court. *See*

*Campbell v. Ingersoll Milling Mach. Co.*, 893 F.2d 925, 927 (7th Cir. 1990).

The United States Supreme Court has explained the term "freely give" as follows:

> In the absence of any apparent or declared reason-such as undue delay, bad faith or
> dilatory motive on the part of a movant, repeated failure to cure deficiencies by
> amendments previously allowed, undue prejudice to the opposing party by virtue of
> allowance of the amendment, futility of the amendment, etc.-the leave sought should,
> as the rules require be freely given.

*Foman v. Davis*, 371 U.S. 178, 182 (1962); *see also Bausch v. Stryker Corp.*, 630 F.3d 546, 562 (7th

Cir. 2010). The standard for futility is the same standard of legal sufficiency that applies under

Federal Rule of Civil Procedure 12(b)(6). *See Townsel v. DISH Network LLC*, 668 F.3d 967, 969

(7th Cir. 2012); *Gen. Elec. Capital Corp. v. Lease Resolution Corp.*, 128 F.3d 1074, 1085 (7th Cir.

1997).

A motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) tests the

sufficiency of the counterclaim and not the merits of the suit. *See Gibson v. City of Chi.*, 910 F.2d

1510, 1520 (7th Cir. 1990). In ruling on such a motion, the Court accepts as true all of the well-

pleaded facts alleged by the counterclaimant and all reasonable inferences that can be drawn

therefrom. *See Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555-56 (2007); *see also Tamayo v.

Blagojevich*, 526 F.3d 1074, 1082 (7th Cir. 2008).

To survive a 12(b)(6) motion to dismiss for failure to state a claim, the counterclaim must

first comply with Rule 8(a) by providing "a short and plain statement of the claim showing that the

pleader is entitled to relief," Fed. R. Civ. P. 8(a)(2), such that the counter-defendant is given "fair

notice of what the . . . claim is and the grounds upon which it rests." *Twombly*, 550 U.S. at 555

(quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 677-78

(2009). Second, the "[counterclaim] must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 570); *see also Tamayo*, 526 F.3d at 1082. The Supreme Court explains that the counterclaimant's "obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (quotation marks and brackets omitted); *see also Iqbal*, 556 U.S. at 678-79; *Brooks v. Ross*, 578 F.3d 574, 581 (7th Cir. 2009). Determining whether a counterclaim states a plausible claim for relief requires the Court to draw on its judicial experience and common sense. *Iqbal*, 556 U.S. at 679.

Before addressing the merits of Meyer's Motion for Leave to File Amended Counterclaim, the Court considers Fifth Third's Motion to Strike.

## A. Motion to Strike

Fifth Third moves the Court to strike Meyer's reply brief in support of his Motion for Leave to File Amended Counterclaim for three reasons, each of which the Court addresses in turn.[1]

### 1. Standard of Review

In opposition to the Motion to Amend, Fifth Third argues that the claims in Meyer's proposed Amended Counterclaim would be futile because they could not withstand a motion to dismiss. As noted above, the standard for the futility of a proposed amended pleading is the same standard of legal sufficiency that applies under Federal Rule of Civil Procedure 12(b)(6). In that response brief, Fifth Third cites the proper standard for a motion to dismiss for failure to state a

---

[1] In its own reply brief, Fifth Third abandons its argument that Meyer's reply brief should be stricken as untimely, recognizing that Meyer's reply was timely filed because the date it was due under the rules fell on a federal holiday (Columbus Day), thus making the deadline the following day, October 9, 2012. *See* Fed. R. Civ. P. 6(a)(1)(C).

claim under Rule 12(b)(6) as articulated by the United States Supreme Court in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555-56 (2007), and *Ashcroft v. Iqbal*, 556 U.S. 662, 677-78 (2009).

However, in his reply in support of the Motion to Amend, Meyer does not cite either *Twombly* or *Iqbal*, instead citing the prior "any set of facts" standard. *See* Meyer Reply Br., p. 2 (docket entry 138). In his response to the instant Motion to Strike, Meyer acknowledges the plausibility standard set forth in *Twombly* and *Iqbal*. Meyer cites law from United States District Courts and United States Circuit Courts of Appeals outside of the Seventh Circuit Court of Appeals to argue that *Twombly/Iqbal* should not be followed, but Meyer does not cite any mandatory law from the Seventh Circuit Court of Appeals or persuasive authority from the district courts within the circuit. Meyer also argues that the *Twombly/Iqbal* standard does not apply to counterclaims for the same reason that it does not apply to affirmative defenses, offering no citation to law, reasoning, or argument for this assertion. This is incorrect. While the *Twombly/Iqbal* standard has been found not to apply to affirmative defenses, which constitute a response to a pleading, a counterclaim, like a complaint, asserts a claim for relief. *See e.g.*, *Heartland Recreational Vehicles, LLC v. Forest River, Inc.*, 3:11-CV-250, 2012 WL 4050301, *2-3 (N.D. Ind. Sept. 12, 2012); *Illini State Trucking, Inc. v. Carmeuse Lime, Inc*, 2:10-CV-21, 2012 WL 162538, *2 (N.D. Ind. Jan. 18, 2012); Fed. R. Civ. P. 8(c); Fed. R. Civ. P. 13(a), (b).

Fifth Third argues that the failure to cite the proper legal standard for a motion to dismiss is grounds for striking the reply brief. The Court disagrees and denies the Motion to Strike on this basis. The Court will consider the Motion to Amend, the response, and the reply under the proper legal standards.

2. *Evidence Outside the Record*

As set forth above, the applicable standard under 12(b)(6) tests the sufficiency of the proposed pleading and not the merits of the claims. Thus, in deciding whether Meyer's proposed Amended Counterclaim is futile because it cannot withstand a motion to dismiss, the Court evaluates the sufficiency of the proposed Amended Counterclaim and the documents attached to it and does not examine evidence outside the pleadings. *Reger Dev., LLC v. Nat'l City Bank*, 592 F.3d 759, 764 (7th Cir. 2010); Fed. R. Civ. P. 10(c). However, the Court may consider documents incorporated by reference in the pleadings. *United States v. Wood*, 925 F.2d 1580, 1581-82 (7th Cir. 1991).

In support of his reply brief on the Motion to Amend, Meyer attaches four exhibits (A-D) not attached to the proposed Amended Counterclaim. None of the Exhibits are incorporated by reference into the proposed Amended Counterclaim. The Court **GRANTS** the Motion to Strike as to Exhibits A-D (Docket entries 138-1, 138-2, 138-3, 138-4).

Meyer suggests that Fifth Third's response to the Motion to Amend may incorporate arguments made under Federal Rules of Civil Procedure 12(b)(1)-(5); there is no support for this argument as Fifth Third's objection to the amendment is that the claims would be futile because they would not survive a motion to dismiss for failure to state a claim. Meyer also appears to suggest that the Court consider converting Fifth Third's response brief into a motion for summary judgment in order to consider the documents submitted with his reply brief. Although a court may convert a Rule 12(b)(6) motion to dismiss into a summary judgment if "matters outside the pleadings are presented to and not excluded by the court," Fed. R. Civ. P. 12(d), there is not currently pending a motion to dismiss for the Court to convert. Moreover, the proposed Amended Counterclaim is not

yet a pleading filed with this Court; thus, there is no pleading to which a motion for summary judgment could be applied.

3.    *Discovery Dispute*

Finally, Meyer asserts in his reply brief in support of the Motion to Amend that there is an ongoing discovery dispute with Fifth Third and suggests that the Court must first make determinations and a ruling regarding the adequacy of Fifth Third's discovery responses before any ruling is issued on Fifth Third's response to the Motion to Amend. In the Motion to Strike, Fifth Third denies that there is any discovery dispute and asks the Court to strike the reply brief as an improper method for raising a discovery dispute.

The Federal Rules of Civil Procedure and the Local Rules of the United States District Court for the Northern District of Indiana govern the procedure for bringing a discovery dispute before the Court, including the filing of a motion, a supporting brief, and a certification specifically detailing the parties' attempts to resolve the discovery dispute informally before seeking Court intervention. Meyer has not complied with these requirements in his reply brief. To the extent Meyer required Court assistance with discovery, Meyer did not do so either at the time the discovery dispute arose or prior to filing the instant Motion to Amend. Nevertheless, this is not a basis on which to strike the reply brief, and the Court denies the Motion to Strike based on this argument. To the extent that Meyer raises a discovery dispute in his reply brief in support of his Motion to Amend, the Court disregards those arguments and makes no ruling on the merits of any discovery dispute between Meyer and Fifth Third. This would have been the Court's ruling even in the absence of the instant Motion to Strike.

## B.  Motion to Amend Counterclaim

The Court now turns to the merits of Meyer's Motion for Leave to File Amended Counterclaim.  In the instant motion, Meyer seeks leave of Court to amend his Counterclaim against Fifth Third, explaining that, as the result of discovery that has been produced by Fifth Third and other parties involved in the litigation, Meyer has learned additional facts unknown to him at the time of filing the original Counterclaim.  The proposed Amended Counterclaim withdraws the civil conspiracy and the breach of duty of good faith and fair dealing claims alleged in the original Counterclaim.  Meyer's proposed Amended Counterclaim appears to allege claims of constructive fraud, negligence, breach of contract, and tortious interference with contractual relationship.  Fifth Third opposes the proposed Amended Counterclaim on the basis that the amendment would be futile, arguing that the pleading could not withstand a motion to dismiss because it fails to include any of the facts that Meyer allegedly has learned and that it contains only formulaic recitations of the elements of ill-pled claims.  The Court considers each of Fifth Third's objections in turn.

*1.    Constructive Fraud*

 a. Elements of a claim of constructive fraud

 "Constructive fraud arises by operation of law from a course of conduct which, if sanctioned by law, would secure an unconscionable advantage, irrespective of the existence or evidence of actual intent to defraud."  *Demming v. Underwood*, 943 N.E.2d 878, 892 (Ind. Ct. App. 2011) (quoting *Kreighbaum v. First Nat. Bank & Trust*, 776 N.E.2d 413, 420 (Ind. Ct. App. 2002)); *see also Mullen v. Cogdell*, 643 N.E.2d 390, (Ind. Ct. App. 1994) (citing *Paramo v. Edwards*, 563 N.E.2d 595, 598 (Ind. 1990)).  The elements of constructive fraud are:

> (i) a duty owing by the party to be charged to the complaining party due to their relationship; (ii) violation of that duty by the making of deceptive material

> misrepresentations of past or existing facts or remaining silent when a duty to speak
> exists; (iii) reliance thereon by the complaining party; (iv) injury to the complaining
> party as a proximate result thereof; and (v) the gaining of an advantage by the party
> to be charged at the expense of the complaining party.

*Demming*, 943 N.E.2d at 892 (quoting *Rice v. Strunk*, 670 N.E.2d 1280, 1284 (Ind. 1996); citing

*Kreighbaum*, 776 N.E.2d at 421).

Fifth Third argues that Meyer's constructive fraud claim could not withstand a motion to

dismiss because Meyer fails to plead any facts that, if taken as true, establish that a special

relationship exists between him and Fifth Third. A plaintiff alleging the existence of constructive

fraud "must prove a fiduciary or fiduciary-like relationship to establish constructive fraud." *In re*

*Rueth Dev. Co.*, 976 N.E.2d 42, 52 (Ind. Ct. App. 2012) (quoting *Cash in a Flash, Inc. v.*

*McCullough*, 853 N.E.2d 533, 538 (Ind. Ct. App. 2006)); *see also Mudd v. Ford Motor Co.*, 178 F.

App'x 545, 547 (7th Cir. 2006). A duty owed to the complaining party "may arise in one of two

ways: by virtue of the existence of a fiduciary relationship, or in the case where there is a buyer and

a seller, where one party may possess knowledge not possessed by the other and may thereby enjoy

a position of superiority over the other." *Strong v. Jackson*, 777 N.E.2d 1141, 1146 (Ind. Ct. App.

2002) (quoting *Epperly v. Johnson*, 734 N.E.2d 1066, 1073 (Ind. Ct. App. 2000)). "A confidential

or fiduciary relationship exists when confidence is reposed by one party in another with resulting

superiority and influence exercised by the other." *Estates of Kalwitz v. Kalwitz*, 717 N.E.2d 904,

914 (Ind. Ct. App. 1999). "[T]he question of whether a confidential relationship exists is one of fact

to be determined by the finder of fact." *Id*. (citing *Dawson v. Hummer*, 649 N.E.2d 653, 661 (Ind.

Ct. App. 1995)).

The mere existence of a relationship between a lender and its borrower does not create a

special relationship of trust or confidence. *DeSimone v. Quicken Loans, Inc.*, No. 1:09-CV-1421,

13

2011 WL 2470642, *7 (S.D. Ind. June 20, 2011) (quoting *Am. Heritage Banco v. Cranston*, 928 N.E.2d 239, 246 (Ind. Ct. App. 2010); *Wilson v. Lincoln Fed. Sav. Bank*, 790 N.E.2d 1042, 1047 (Ind. Ct. App. 2003)); *Huntington Mortg. Co. v. DeBrota*, 703 N.E.2d 160, 167 (Ind. Ct. App. 1998) ("Mortgages do not transform a traditional debtor-creditor relationship into a fiduciary relationship absent an intent by the parties to do so.") (citing *Judd v. First Fed. Sav. and Loan Ass'n*, 710 F.2d 1237, 1241 (7th Cir. 1983)); *Block v. Lake Mortg. Co., Inc.*, 601 N.E.2d 449, 452 (Ind. Ct. App. 1992) ("A fiduciary relationship does not exist between a lender and a borrower unless certain facts exist which establish a relationship of trust and confidence between the two."). Duties do not arise out of a garden-variety "arms-length, contractual arrangement." *Comfax Corp. v. N. Am. Van Lines, Inc.*, 587 N.E.2d 118, 125-26 (Ind. Ct. App. 1992).

Fifth Third contends that Meyer has pled nothing more than an arms-length commercial lending transaction and that no fiduciary relationship can exist on these facts. In response, Meyer argues that a special relationship exists because Fifth Third has been engaged in a joint venture with Minas and his entities.

In the proposed Amended Counterclaim, Meyer alleges that Fifth Third was a lender and then concludes that Meyer, Matney, Minas, and Fifth Third were in a joint venture. "Under Indiana law, a joint venture is an association of two or more parties formed to carry out a single business enterprise for profit, and it involves only a single transaction." *Yessenow v. Hudson*, No. 2:08-CV-353, 2012 WL 2990643, *10 (N.D. Ind. July 19, 2012) (quoting *Lauth Ind. Resort & Casino, LLC v. Lost River Dev., LLC*, 889 N.E.2d 915, 920, 922 (Ind. Ct. App. 2008)). In order for a joint venture to exist, "the parties must be bound by an express or implied contract providing for (1) a community of interests, and (2) joint or mutual control, that is, an equal right to direct and govern the

undertaking." *Id.* (quoting *Wilson v. Am. Trans Air, Inc.*, 874 F.2d 386, 392 (7th Cir. 1989) (citations and quotation marks omitted)). All of the facts Meyer alleges and argues in support of a joint venture involve Fifth Third and *Minas*. Even if the existence of a joint venture between Fifth Third and Minas has been sufficiently alleged, which the Court need not decide, Meyer has not alleged that Fifth Third has engaged in a joint venture with *Meyer* from which a special relationship could be found to exist for purposes of establishing a duty flowing from Fifth Third to Meyer for the claim of constructive fraud.

Meyer also cites law regarding the duty that may arise through a confidential relationship toward another when one party is induced to repose trust and confidence in the other as in cases of the personal friendship of the parties or where one party knows that the other is relying on the other for a full and truthful statement of all the facts. Meyer Reply, p. 5 (citing without discussion *Ray v. Baker*, 74 N.E. 619 (Ind. 1905); *Godwin v. DeMotte*, 116 N.E. 17 (Ind. App. 1917); *Firebaugh v. Trough*, 107 N.E. 301 (Ind. App. 1914); *Lindley v. Kemp*, 76 N.E. 798 (Ind. App. 1905)).

*Godwin v. DeMotte* involved a real estate transaction of farm land in 1913 between a young man of 21 years "inexperienced in business transactions" and "unacquainted with business methods" and two men of "mature years" of "large experience in business affairs" and "fully acquainted with business methods" where the young man believed that the older men, whom he had known for years, were his friends and were reputable men. 116 N.E. at 18. The young man relied on the representations of the older men to his detriment. *Id.* at 18-19.

In *Ray v. Baker*, one of the parties to a note and a mortgage was illiterate, practically unable to speak or write the English language, unacquainted with business matters, and wholly ignorant of

the meaning of legal forms and proceedings.  74 N.E. at 620.  That party relied on the statements of the other party to the real estate transaction to his detriment.  *Id*.

In *Firebaugh v. Trough*, the parties to the real estate transaction were a husband and wife on one hand and a widow on the other, who, along with her deceased husband during his lifetime, were friends with the other couple that visited each other.  107 N.E. at 301.  Before his death, the widow's husband had expressed confidence in the integrity and honesty of the other husband.  *Id*.  The widow was a woman of more than average intelligence but was inexperienced and unaccustomed to business, whereas the other husband was a man of experience and more than ordinary business ability who knew that the widow was unfamiliar with business methods and not accustomed to transacting business.  *Id*.  The widow relied on the representations of the other couple to her detriment.  *Id*. at 303-04.

*Lindley v. Kemp* involved a real estate transaction in 1890.  76 N.E. 798.  A widow, who was infirm by reason of her age and ill health, inexperienced in business affairs, ignorant of the law concerning real estate and tax matters, and incapable of attending to her affairs, relied to her detriment on the statements of another property owner that she did not have to pay property taxes on land in which she held a life estate and that was owned by one of her minor male children.  *Id*. at 800-801.

None of the four cases is factually analogous to the instant case in that there are no allegations in the proposed Amended Counterclaim that Meyer lacked sophistication in the business world or was in a position of inferiority in buyer/seller relationship with regard to Fifth Third. Meyer argues in his reply brief, although not in the proposed Amended Counterclaim, that he had developed a friendship with two specific representatives of Fifth Third and that those two

individuals intentionally developed a friendship with Meyer to gain his confidence and trust. Meyer states in his brief that he asked one of the representatives for business advice and grew to rely upon that advice and friendship. He also states that the representatives hid or failed to disclose Double Tree interest reserve accounts and the fact that payments were being made from restricted accounts to pay Minas and his attorneys instead of overdue interest on the loans and failed to disclose that new loans were being made to Minas and the Double Tree entities. However, all of these alleged acts are events that took place *after* Meyer signed the personal guaranty. Thus, Meyer has not alleged any facts establishing a relationship of trust and confidence between Meyer and Fifth Third at a time when Meyer relied on Fifth Third to his detriment. The signing of the guaranty was an arms-length transaction, and Meyer has not alleged any facts to indicate otherwise.

Meyer and Fifth Third were in a relationship of lender and borrower. "A fiduciary relationship does not exist between a lender and a borrower unless certain facts exist which establish a relationship of trust and confidence between the two." *Block*, 601 N.E.2d at 452. Meyer argues that, nevertheless, special relationships sufficient to uphold constructive fraud claims have been held in a buyer/seller relationship. Meyer Reply, p. 6 (citing *Mullen v. Cogdell*, 643 N.E.2d 390 (Ind. Ct. App. 1994); *Kirkpatrick v. Reeves*, 22 N.E.139 (Ind. 1889) (alleged sale of a jackass after a false representation by the seller on which the purchaser relied); *Scott v. Bodor, Inc.*, 571 N.E.2d 313 (Ind. Ct. App. 1991) (buyer/seller relationship in which buyer relies on unqualified statements of the seller); *Coffey v. Wininger*, 296 N.E.2d 154 (Ind. Ct. App.1973) (recognizing that a false statement of fact made honestly, without fraudulent intent, will support a finding of constructive fraud only where it was made to induce reliance by the other party and where the other party relied on the statement and was damaged thereby); *Smart & Perry Ford Sales, Inc. v. Weaver*, 274 N.E.2d

718 (Ind. Ct. App. 1971) (same)).  In *Mullen*, the court found that there was no fiduciary relationship between the parties because they were involved in arms-length negotiations resulting in the formation of a contract.  643 N.E.2d at 401.  However, the court recognized that a claim of constructive fraud may arise when the relationship between the parties is that of buyer and seller because one party may be in the unique possession of knowledge not possessed by the other and may thereby enjoy a position of superiority over the other.  *Id*.  Meyer has not alleged that he and Fifth Third were in a buyer/seller relationship.  Meyer has not alleged any facts that Fifth Third or its agents possessed knowledge that put it in a superior position over Meyer at a time when Meyer was relying on that knowledge to enter into the personal guaranty or to purchase the Double Tree development as a part of the Double Tree Estates, LLC.  Again, the alleged fraudulent acts or silence by Fifth Third occurred not during the business transaction with Meyer but rather after.

To the extent that Meyer asserts in his reply brief that Fifth Third's representatives misled Meyer into thinking that Double Tree was not entering into any more loan agreements and asserts that a representative of Fifth Third "entered into an illusory agreement to fund the Minas/Meyer settlement agreement upon which Meyer relied to his detriment," these allegations are not made in the proposed Amended Counterclaim.  Meyer Reply, p. 7.  Meyer does not allege in the proposed Amended Counterclaim that he relied on Fifth Third's misrepresentations in entering into the Settlement Agreement with Minas.

Meyer's proposed Amended Counterclaim alleges facts that Fifth Third owed a duty to Meyer based on their contractual relations as lender and borrower.  Meyer has not alleged any facts to show a special relationship of trust and confidence on which he relied during the course of that transaction.  Thus, because Meyer's constructive fraud claim in the proposed Amended

Counterclaim would not survive a motion to dismiss, the Court **DENIES** the Motion to Amend to the extent it seeks to allege a claim of constructive fraud. The Court **GRANTS** Meyer leave to plead additional factual allegations to cure these deficiencies regarding the special relationship that may have arisen after the guaranty and how Meyer relied on the friendship and representations and/or silence of representatives of Fifth Third to his detriment after the special relationship arose as well as to cure the pleading deficiencies set forth in the following section.

b.      Heightened pleading standard for fraud

Fifth Third argues that Meyer's proposed claim of constructive fraud fails to allege the who, what, where, when, why, and how required by the Federal Rules of Civil Procedure for a claim of fraud. Federal Rule of Civil Procedure 9(b) provides: "In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake. Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally." Fed. R. Civ. P. 9(b). The Rule 9(b) standard "ensure[s] that the party accused of fraud, a matter implying some degree of moral turpitude and often involving a 'wide variety of potential conduct,' is given adequate notice of the specific activity that the plaintiff claims constituted the fraud so that the accused party may file an effective responsive pleading." *Lachmund v. ADM Investor Servs.*, 191 F.3d 777, 783 (7th Cir. 1999) (quoting 5 Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1296, at 580 (2d ed. 1990)). "Particularity, for Rule 9(b) purposes, means that a plaintiff must ordinarily describe the who, what, when, where, and how of the fraud–the first paragraph of any newspaper story." *Gagan v. United Consumers Club, Inc.*, No. 2:10-CV-26, 2012 WL 729943, *6 (N.D. Ind. Mar. 6, 2012) (internal quotation marks omitted) (quoting *Pirelli Armstrong Tire Corp. Retiree Med. Benefits Trust*, 631 F.3d at 441-42 (7th Cir. 2011)).

Even if Meyer had alleged any facts in support of a special relationship, Meyer fails to plead the circumstances underlying the constructive fraud claim with sufficient particularity as required by Rule 9(b).  In paragraph 31, Meyer alleges simply that the actions of Fifth Third constitute fraud and have proximately caused Meyer to suffer pecuniary losses for which he is entitled to recover. Meyer does not identify who at Fifth Third took the purported actions and omissions.  He does not identify when or where the alleged actions took place, what Fifth Third specifically did, or how Fifth Third accomplished the allegedly wrongful conduct.  *See Schott v. Huntington Nat'l Bank*, No. 1:12-CV-430, 2012 WL 6725902, *7-8 (S.D. Ind. Dec. 27, 2012) (citing *Winforge, Inc. v. Coachmen Indus., Inc.*, No. 1:06-CV-619, 2007 WL 854025 (S.D. Ind. Mar. 13, 2007)); *Taylor v. Feinberg*, No. 08-CV-5588, 2009 WL 3156747, *5 (N.D. Ill. Sept. 28, 2009).  Although Meyer "was not required to . . . allege the facts necessary to show that the alleged fraud was actionable," Rule 9(b) does require that it "set forth the date and content of the statements or omissions that it claimed to be fraudulent."  *Midwest Commerce Banking Co. v. Elkhart City Ctr.*, 4 F.3d 521, 524 (7th Cir. 1993) (citations omitted).  The Court finds that the proposed Amended Counterclaim fails to meet Rule 9(b)'s particularity requirement.  Although Meyer names in his reply brief a few of the Fifth Third representatives he alleges he befriended and upon whom he relied, all allegations of a claim of fraud must be in the pleading itself and cannot be supplemented by a responsive brief.  *MDG Intern., Inc. v. Australian Gold, Inc.*, No. 1:07-CV-1096, 2008 WL 3982072, *2 (S.D. Ind. Aug. 22, 2008).

Meyer argues that an exception to Rule 9(b) allows facts to be pled based on information and belief when the facts are peculiarly within the opposing party's knowledge.  Meyer Reply, p. 7 (citing cases, including *Luce v. Edelstein*, 802 F.2d 49, 52 n. 1 (2d Cir. 1986)).  However, Meyer fails to cite the requirement that such allegations must be accompanied by a statement of the facts

upon which the belief is founded. *See Bankers Trust Co. v. Old Republic Ins. Co.*, 959 F.2d 677, 684 (7th Cir. 1992); *Duane v. Altenburg*, 297 F.2d 515, 518 (7th Cir. 1962); *Luce*, 802 F.2d at 52 n.1. Meyer has not attempted to meet this requirement. Should Meyer decide to add additional allegations necessary to state a claim for constructive fraud as set forth in the preceding section, Meyer is also **GRANTED** leave to allege the additional facts necessary under Rule 9(b) to state the claim with the requisite particularity.

2.    *Negligence*

       a.    Economic loss doctrine

Fifth Third argues that Meyer's negligence claim is barred by the economic loss doctrine because Meyer seeks damages for solely pecuniary losses he allegedly suffered. Under Indiana law, the tort of negligence renders a defendant liable to a plaintiff if "(1) the defendant has a duty to conform its conduct to a standard of care arising from its relationship with the plaintiff, (2) the defendant failed to conform its conduct to that standard of care, and (3) an injury to the plaintiff was proximately caused by the breach." *Indianapolis-Marion Cnty. Pub. Library*, 929 N.E.2d 722, 726 (Ind. 2010). When the "injury to the plaintiff is from a defective product or service . . . , the defendant is liable under a tort theory if the defect causes personal injury or damage to property other than the product or service itself." *Id*. However, "a defendant is *not* liable under a tort theory for any purely economic loss caused by its negligence (including, in the case of a defective product or service, damage to the product or service itself)." *Id*. at 726-27. The Indiana Supreme Court explains that, "[t]his rule precluding tort liability for purely economic loss–that is, pecuniary loss unaccompanied by any property damage or personal injury (other than damage to the product or service itself)–has become known as the 'economic loss rule.'" *Id*. at 727. The Indiana Supreme

Court has recognized exceptions to the economic loss doctrine, including but not limited to lawyer malpractice, breach of a duty of care owed to a plaintiff by a fiduciary, breach of a duty to settle owed by a liability insurer to the insured, and negligent misstatement. *U.S. Bank, N.A. v. Integrity Land Title* Corp., 929 N.E.2d 742, 745-46 (Ind. 2010) (citing *Indianapolis-Marion Cnty. Pub. Library*, 929 N.E.2d at 736).

In this case, Meyer's negligence claim seeks damages for solely pecuniary losses he has allegedly suffered. Meyer alleges that Fifth Third took certain actions that reduced the value of his ownership interest in Double Tree Lake Estates LLC and caused him not to receive a cash payout contemplated by the Settlement Agreement between Meyer and Minas. There are no allegations that Meyer suffered injury to his person or to any property. However, Meyer argues that two of the exceptions to the economic loss doctrine apply to his negligence claim: (1) negligent misrepresentation and (2) breach of fiduciary duty. As to the latter, Meyer has not alleged any special or fiduciary relationship between Fifth Third and himself.

As for the former, Indiana has recognized liability for the tort of negligent misrepresentation. *Indianapolis-Marion Cnty. Pub. Library*, 929 N.E.2d at 741 (citing *Passmore v. Multi-Mgmt. Servs., Inc.*, 810 N.E.2d 1022, 1025 (Ind. 2004)). "[N]egligent misrepresentation may be actionable and inflict only economic loss." *Id*. (citing *Greg Allen Constr. Co., Inc. v. Estelle*, 798 N.E.2d 171, 174 (Ind. 2003)). In *Indianapolis-Marion County Public Library*, the court found the exception inapplicable because the plaintiff was "connected with the Defendants through a network or chain of contracts." *Id*. In another case decided the same date, *U.S. Bank, N.A. v. Integirty Land Title Corp.*, the court recognized the claim of negligent misrepresentation as an exception to the general economic loss doctrine when a mortgage lender *not* in privity of contract with a title company

sought to recover for the title company's negligence in issuing a title commitment that failed to disclose an encumbrance. 929 N.E.2d at 745-46. Meyer has alleged that he and Fifth Third entered into a contract regarding the funding of the Settlement Agreement between Meyer and Minas. It is not clear at this stage of the litigation that this alleged contract covers the same conduct as Meyer's negligence action. Thus, whether or not Meyer has recourse in contract determines whether the exception for negligent misrepresentation may apply to Meyer's negligence claims against Fifth Third. Fifth Third did not address the exceptions to the economic loss doctrine in its response brief. Therefore, Fifth Third has not demonstrated in response to the Motion to Amend that Meyer's negligence claims would be futile under the economic loss doctrine.

b.      Failure to state a claim

Fifth Third next argues that Meyer's negligence claim is nothing more than a threadbare recital of the elements, supported only by conclusory statements. First, Fifth Third argues that Meyer's allegation that Fifth Third owed him a duty is nothing more than a legal conclusion. However, the allegation that Fifth Third identifies–that Fifth Third had management or control over the Double Tree Enterprise–is not a legal conclusion but rather a factual conclusion. Fifth Third also argues that Meyer simply concludes that he was damaged and that Meyer fails to include any factual allegations that provide the grounds of how Meyer was injured by Fifth Third's allegedly negligent conduct. However, Meyer alleges in paragraph 19 that Fifth Third and Minas "intentionally and/or negligently misrepresented the number of lots in certain phases of the Doubletree development to justify increasing the debt of the Double Tree Enterprise to the detriment of Meyer and funneled the money to Minas, his attorneys, his accountants and his affiliates." Proposed Am. Counterclaim, ¶

19.  Thus, on the basis of these arguments advanced in its response brief, Fifth Third has not demonstrated that the proposed negligence claim would be futile.

c.      Statute of Limitations

Under Indiana law, a negligence action must be brought within two years of the date the cause of action accrues.  Ind. Code § 34-11-2-4.  "Under Indiana's discovery rule, a cause of action accrues, and the statute of limitations begins to run, when a claimant knows or in the exercise of ordinary diligence should have known of the injury."  *Pflanz v. Foster*, 888 N.E.2d 756, 759 (Ind. 2008).  "While a statute of limitations defense is not normally part of a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), when the allegations of the complaint reveal that relief is barred by the applicable statute of limitations, the complaint is subject to dismissal for failure to state a claim."  *Logan v. Wilkins*, 644 F.3d 577, 582 (7th Cir. 2011).

In the proposed Amended Counterclaim, Meyer alleges that Fifth Third's alleged wrongful conduct began in May 2007.  Meyer filed the instant motion over five years later.  Fifth Third argues that the allegations in proposed paragraphs 14 and 15 demonstrate that Meyer knew of the alleged negligent conduct as early as May 2007.  Paragraph 14 alleges: "From May 2, 2007, to present, Fifth Third and Minas have been in complete control of the Doubletree Enterprise, physically having had Meyer and Matney removed and excluded from all meaningful involvement and managerial control in contravention of the formal Double Tree Operating Agreements."  Proposed Am. Counterclaim, ¶ 14.  Paragraph 15 alleges: "From May 2, 2007, to date, the Doubletree Enterprise has been negligently mismanaged by Fifth Third and Minas whose negligence is the responsible cause of significant pecuniary losses suffered by the Doubletree Enterprise and Meyer."  *Id.* at ¶ 15. Although there is a reference to a physical exclusion from management, neither of these paragraphs

provides that Meyer knew of these allegations beginning in May 2007; there is no allegation in the proposed Amended Counterclaim as to when Meyer knew of his injury.

In his reply brief, Meyer invokes the doctrine of fraudulent concealment, arguing that Fifth Third should be estopped from asserting the statute of limitations defense. "In Indiana, the doctrine of fraudulent concealment is available to estop a defendant from asserting the statute of limitations when the defendant has, either by deception or by violating a duty, concealed from the plaintiff material facts, preventing the plaintiff from discovering a potential cause of action." *Logan*, 644 F.3d at 582. In paragraphs 17, 19, and 20, Meyer alleges that Fifth Third hid facts that form the basis of his negligence claim. It is unnecessary for the Court to consider the applicability of the defense at this stage of the litigation because Fifth Third's identification of the allegations in paragraphs 14 and 15 of the proposed Amended Counterclaim, by themselves, do not reveal that relief is barred by the applicable statute of limitations. Although it is possible, and perhaps likely, that Meyer knew of his injury as early as May 2007, especially in light of the 2008 arbitration proceedings and the July 2009 Settlement Agreement, the Court cannot say, based on the arguments currently asserted, that the proposed Amended Counterclaim "establishes" that the claim is time barred. *Logan v. Wilkins*, 644 F.3d at 582. As a result, the Court declines to find on this Motion for Leave to File Amended Counterclaim that any negligence claim is barred by the statute of limitations.

Because Fifth Third has not demonstrated on the arguments asserted in its response brief that Meyer's proposed negligence claim would be futile, the Court **GRANTS** the Motion to Amend as to Meyer's negligence claim.

*3.      Breach of Contract*

Fifth Third argues that Meyer fails to allege facts in support of a breach of contract claim. In his reply brief, Meyer asserts a claim for breach of contract based on the March 2010 agreement between Fifth Third, Minas, and Meyer, a copy of which is attached to the proposed Amended Counterclaim. Fifth Third does not address the March 2010 agreement in its response brief in opposition to the Motion to Amend. In his proposed Amended Counterclaim, Meyer alleges in paragraph 40:

> On March 5, 2010, Fifth Third extended an illusory offer to effectuate the Settlement Agreement by providing funding to Minas for the cash payment required in the Settlement Agreement and approving the lot transfers called for in the Settlement Agreement, which offer was accepted by Meyer on March 8, 2010. (A true and correct copy of the Agreement between [ ]Fifth Third and Meyer which was also signed separately by Minas is attached hereto as Exhibit 4).

Proposed Am. Counterclaim, ¶ 40. Meyer further alleges that Fifth Third breached this Agreement by failing to perform all of its contractual obligations or by placing itself in a position where it is unable to perform those obligations. *Id.*, ¶ 41. Meyer then alleges that Fifth Third's breach of contract has proximately caused Meyer to lose the benefit of his bargain, specifically $1,250,000.00 and seven (7) lots within the Doubletree subdivision. *Id.* ¶ 42. Because Fifth Third does not address Meyer's allegations regarding the March 2010 agreement, the Court cannot say that Fifth Third has shown in its opposition that Meyer's breach of contract claim based on the March 2010 agreement would be futile. Accordingly, the Court **GRANTS** the Motion to Amend to the extent Meyer alleges a breach of contract claim based on the March 2010 agreement.

*4.    Tortious Interference with Contractual Relationship*

Fifth Third argues that Meyer recites only the legal elements of a claim for tortious interference with contractual relationship and fails to allege any facts in support of the claim. Fifth Third contends that Meyer does not include the grounds on which his claim rests, including how or when Fifth Third purportedly caused a breach of any contract. Indiana law recognizes the tort of tortious interference with contract, the elements of which are: (1) the existence of a valid and enforceable contract; (2) defendant's knowledge of the existence of the contract; (3) defendant's intentional inducement of breach of the contract; (4) the absence of justification; and (5) damages resulting from defendant's wrongful inducement of the breach. *Levee v. Beeching*, 729 N.E.2d 215, 221 (Ind. Ct. App. 2000) (citing *Biggs v. Marsh*, 446 N.E.2d 977, 983 (Ind. Ct. App. 1983)). In his reply brief, Meyer asserts that his claim of tortious interference with contract is based on Fifth Third's interference with the Settlement Agreement.

In the proposed Amended Counterclaim, Meyer alleges the existence of the Settlement Agreement as a valid contract and that Fifth Third had knowledge of the Settlement Agreement. Meyer alleges in paragraph 39 of the proposed Amended Counterclaim that the Settlement Agreement was "simply a ruse concocted by Minas and Fifth Third so that Minas could obtain a FINRA retraction letter and delay matters while further equity was removed from the Doubletree Enterprise," in paragraph 44 that Minas and Fifth Third have worked in secret collusion to provide illusory agreements for the purpose of delay, in paragraph 47 that Fifth Third acted in concert with Minas in the interference with Meyer's contractual rights under the Settlement Agreement (which has been ruled enforceable by the Indiana State Court), in paragraph 48 that Fifth Third has wrongly interfered with the contractual relations between Minas and Meyer in regard to the Settlement

Agreement, in paragraph 49 that the Settlement Agreement was a proper contract, and in paragraph 50 that Fifth Third had knowledge or should have had knowledge of the Settlement Agreement. Finally, Meyer alleges that Fifth Third caused the breach of the Settlement Agreement with no justification. Based on Fifth Third's argument and the allegations in the proposed Amended Counterclaim, Fifth Third has not demonstrated that Meyer's tortious interference with contract claim based on the Settlement Agreement would be futile. Accordingly, the Court **GRANTS** the Motion to Amend as to this claim for tortious interference with contract as to the Settlement Agreement.

## CONCLUSION

Based on the foregoing, the Court hereby **GRANTS in part and DENIES in part** Plaintiff Fifth Third Bank's Motion to Strike Defendant Anthony Meyer's Reply in Support of Motion for Leave to File Amended Counterclaim [DE 140] and **GRANTS in part** and **DENIES in part** Anthony Meyer's Motion for Leave to File Amended Counterclaim Against Fifth Third Bank [DE 133]. The Court grants Defendant/Crossclaimant Anthony Meyer up to and including **February 26, 2013**, in which to **FILE** his Amended Counterclaim consistent with this Opinion and Order.

So ORDERED this 12th day of February, 2013.

s/ Paul R. Cherry
MAGISTRATE JUDGE PAUL R. CHERRY
UNITED STATES DISTRICT COURT

cc: All counsel of record