# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF INDIANA
### HAMMOND DIVISION

| | |
|---|---|
| FIFTH THIRD BANK, )<br>        Plaintiff, )<br> )<br>v. )<br> )<br>DOUBLE TREE LAKE ESTATES, LLC, )<br>DOUBLETREE GOLF, LLC, DBL )<br>RESIDENTIAL, L.P., KENNETH )<br>MATNEY, ANTHONY MEYER, and )<br>RANDALL MINAS, )<br>        Defendants. )<br>_____ )<br> )<br>KENNETH MATNEY, )<br>        Counter-Plaintiff, )<br> )<br>v. )<br> )<br>FIFTH THIRD BANK, )<br>        Counter-Defendant. ) | CAUSE NO.: 2:11-CV-233-PPS-PRC |

## OPINION AND ORDER

This matter is before the Court on Kenneth Matney's Motion for Leave to File Amended Counter-Claim Against Fifth Third Bank [DE 134], filed by Defendant Kenneth Matney on September 11, 2012, and on Plaintiff Fifth Third Bank's Motion to Strike Defendant Kenneth Matney's Reply in Support of His Motion for Leave to File Amended Counterclaim [DE 139], filed by Plaintiff Fifth Third Bank ("Fifth Third") on October 13, 2012. Both motions are fully briefed and ripe for review.

## PROCEDURAL AND FACTUAL BACKGROUND

This litigation stems from a loan agreement between Fifth Third and Double Tree Lake Estates LLC ("Double Tree"), under which Fifth Third made various loans to Double Tree. Double Tree used the proceeds of those loans to purchase and continue developing an existing residential

community, Double Tree Lake Estates ("the development"). The loans were personally guaranteed by Matney, Anthony Meyer, and Randall Minas.

Fifth Third initiated this cause of action on June 29, 2011, when the lot sales allegedly slowed to a pace insufficient to service the indebtedness on the development.

Fifth Third amended its Complaint in February 2012. Defendant Matney filed his Counterclaim against Fifth Third on March 5, 2012, alleging three counts: Breach of Good Faith and Fair Dealing (Count I), Tortious Interference with Matney's Settlement Agreement and Matney's Economic and Business Relationships (Count II), and Civil Conspiracy (Count III).

On March 26, 2012, Fifth Third filed its Answer to Matney's Counterclaim.

On May 31, 2012, Fifth Third filed a Motion for Summary Judgment on its Amended Complaint.

On July 27, 2012, the parties filed a joint motion to stay the case pending the outcome of mediation. On August 16, 2012, the Court stayed this matter, including discovery, pending the outcome of scheduled mediation. However, on August 29, 2012, the parties filed a Motion to Establish Case Management Deadlines, which informed the Court that the parties had not concluded mediation but nevertheless asked the Court to adopt case management deadlines. Therein, Fifth Third also asked to withdraw the pending Motion for Summary Judgment.

On September 4, 2012, the Court granted the parties' requests, withdrawing the Motion for Summary Judgment, setting case management deadlines, and granting Matney up to and including September 11, 2012, in which to file a Motion for Leave to File Amended Counterclaim.

Matney filed the instant Motion for Leave to File Amended Counterclaim on September 11, 2012. Fifth Third filed a response on September 27, 2012, and Matney filed a reply on October 9, 2012.

On October 13, 2012, Fifth Third filed the instant Plaintiff Fifth Third Bank's Motion to Strike Defendant Kenneth Matney's Reply in Support of His Motion for Leave to File Amended Counterclaim. Matney filed a response on November 13, 2012, and Fifth Third filed a reply on November 26, 2012.

In the proposed Amended Counterclaim, Matney states that he is seeking damages on various legal theories including breach of contract, constructive fraud, negligence, negligent mismanagement, and tortious interference with contractual relations on the part of Fifth Third as it pertains to Matney.

Matney alleges in the proposed Amended Counterclaim that, in 2004, Matney was presented with an opportunity to purchase the Double Tree Lake Estates development of approximately 600 acres from David Lasco. Because he did not have the financial wherewithal to purchase the development outright, Matney put together a joint venture that included himself, Meyer, Minas, and Fifth Third, which Matney describes as the "Double Tree Enterprise."

Matney alleges that, pursuant to the formal documents, Fifth Third was a lender and not an owner; however, the true substance of Fifth Third's conduct, accompanied by the special relationship of trust and confidence that existed between Fifth Third through its officers, employees, and agents on one hand and Minas, Matney, and Meyer on the other, rendered the venture a joint venture among Fifth Third, Matney, Meyer, and Minas. The day-to-day operations of the development were to be managed by Matney and Meyer. Fifth Third and Minas were to provide

initial capital and strategic business advice; however, Matney provided over $1.7 million in capital directly to the purchase.

Matney alleges that, in form and operation, the ownership arrangement of the development became: (a) Matney and Meyer through the entity by the name KA Enterprises, LLC; (b) Minas through Sanim Management Company LLC, owner and manager of MDRM LLC; and (3) Fifth Third under the auspices of various loan documents, agreements, and contracts among the named parties, including a Subordination Agreement between Matney, Lasco, and Fifth Third.

Matney alleges that Fifth Third intentionally excluded Matney from any meaningful participation in the management of the Double Tree Enterprise. Matney alleges that Fifth Third participated in the drafting of a proposed Third Amendment to the Double Tree Operating Agreement that would have given actual control to Minas and control over the management, operation, and profit potential of the Double Tree Enterprise. He alleges that Fifth Third colluded with Minas in an effort to try to obtain enforcement of the proposed unsigned Third Amendment to the Double Tree Operating Agreement through an arbitration process. Attorney Terrill D. Albright became the arbitrator and, after a hearing, ordered enforcement of the unsigned and unconsented proposed Third Amendment to the Double Tree Operating Agreement. Later, following the arbitration hearing and the summer 2008 arbitration ruling, it was discovered that Attorney Albright had failed to disclose that his law firm had represented Fifth Third in numerous matters. Matney alleges that Albright would have been disqualified had this fact been previously known. Matney alleges that, although attorneys for Minas in conjunction with Fifth Third had attempted to get the arbitrator's proposed order entered of record by Lake Superior Court Judge John R. Pera, Judge Pera entered an order on October 16, 2008, staying the arbitration award.

Matney alleges that, despite Judge Pera's order, Fifth Third has continued to rely upon and utilize the unsigned Third Amendment to the Double Tree Operating Agreement, in part through a series of attorney opinion letters from various attorneys working for Minas. Matney alleges that Fifth Third, in conjunction with the active participation of Minas, has continued to allow an increase to the global debt limit of this joint venture over the objection of the other owners, including Matney. He alleges that Fifth Third and Minas have allowed the removal of assets from the joint venture in the form of disbursements made directly to Minas, his attorneys, his accountants, his affiliates, and office staff at the development.

Matney alleges that Fifth Third, in conjunction with and in direct collusion with Minas and his affiliated entities, including but not limited to MDRM, LLC; FKAT Properties, LLC; Inverness Estates, LLC; City Securities Corporation; and Sanim Management LLC, entered into a series of at least nine additional loan transactions, amendments, modifications and/or restatements after having locked Matney out of the management and operations of the Double Tree Enterprise. All these actions were allegedly undertaken with no prior notice to Matney of the additional debt or the use to which debt loan proceeds were being applied. Matney alleges that Fifth Third did not provide relevant information, full disclosure, or any documentation, all while attempting to make the nine new loan transactions retroactive to May 2004, which was the time of the original loan agreement to purchase the Double Tree development.

Matney alleges that Fifth Third failed to timely and meaningfully notify and inform Matney of Fifth Third's intentions to enter into various new agreements that would increase the global borrowing limits, which allowed for significant increases in the amount of debt accumulated by Minas during his sole operation of the Double Tree Enterprise, all of which resulted in additional

profits for Fifth Third. In addition, he alleges that Fifth Third's elected course of dealing brought unwanted and unknown financial risk for Matney. He alleges that Fifth Third misrepresented the scope and duration of Matney's Personal Guaranty as to the Double Tree Enterprise and accompanying debt obligations by informing him that loans made by Fifth Third were term loans and would require a new personal guaranty upon renewal. He alleges that, instead, Fifth Third and Minas attempted to make all subsequent loan obligations retroactive, all to the detriment of Matney.

On April 9, 2009, Matney and Minas entered into a Settlement Agreement that called for cash payments to Matney as well as payments to Lasco and others in the nature of defense and indemnification totaling millions of dollars. This Settlement Agreement, in part, was to take care of Fifth Third's failure to enforce its rights and obligations pursuant to the Subordination Agreement between Matney, Lasco, and Fifth Third.

## ANALYSIS

Federal Rule of Civil Procedure 15 governs amendments to pleadings and provides, in part:

> (1) Amending as a Matter of Course. A party may amend its pleading once as a matter of course within:
>     (A) 21 days after serving it, or
>     (B) if the pleading is one to which a responsive pleading is required, 21 days after service of a responsive pleading or 21 days after service of a motion under Rule 12(b), (e), or (f), whichever is earlier.
> (2) Other Amendments. In all other cases, a party may amend its pleading only with the opposing party's written consent or the court's leave. The court should freely give leave when justice so requires.

Fed. R. Civ. P. 15(a). Because the time for Matney to amend his pleading as a matter of course has expired, Matney seeks leave of Court to file the proposed Amended Counterclaim. The decision whether to grant or deny a motion to amend lies within the sound discretion of the district court. *See Campbell v. Ingersoll Milling Mach. Co.*, 893 F.2d 925, 927 (7th Cir. 1990).

The United States Supreme Court has explained the term "freely give" as follows:

> In the absence of any apparent or declared reason-such as undue delay, bad faith or dilatory motive on the part of a movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of the amendment, etc.-the leave sought should, as the rules require be freely given.

*Foman v. Davis*, 371 U.S. 178, 182 (1962); *see also Bausch v. Stryker Corp.*, 630 F.3d 546, 562 (7th Cir. 2010). The standard for futility is the same standard of legal sufficiency that applies under Federal Rule of Civil Procedure 12(b)(6). *See Townsel v. DISH Network LLC*, 668 F.3d 967, 969 (7th Cir. 2012); *Gen. Elec. Capital Corp. v. Lease Resolution Corp.*, 128 F.3d 1074, 1085 (7th Cir. 1997).

A motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) tests the sufficiency of the counterclaim and not the merits of the suit. *See Gibson v. City of Chi.*, 910 F.2d 1510, 1520 (7th Cir. 1990). In ruling on such a motion, the Court accepts as true all of the well-pleaded facts alleged by the counterclaimant and all reasonable inferences that can be drawn therefrom. *See Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555-56 (2007); *see also Tamayo v. Blagojevich*, 526 F.3d 1074, 1082 (7th Cir. 2008).

To survive a 12(b)(6) motion to dismiss for failure to state a claim, the counterclaim must first comply with Rule 8(a) by providing "a short and plain statement of the claim showing that the pleader is entitled to relief," Fed. R. Civ. P. 8(a)(2), such that the counter-defendant is given "fair notice of what the . . . claim is and the grounds upon which it rests." *Twombly*, 550 U.S. at 555 (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 677-78 (2009). Second, the "[counterclaim] must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at

570); *see also Tamayo*, 526 F.3d at 1082. The Supreme Court explains that the counterclaimant's "obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (quotation marks and brackets omitted); *see also Iqbal*, 556 U.S. at 678-79; *Brooks v. Ross*, 578 F.3d 574, 581 (7th Cir. 2009). Determining whether a counterclaim states a plausible claim for relief requires the Court to draw on its judicial experience and common sense. *Iqbal*, 556 U.S. at 679.

Before addressing the merits of Matney's Motion for Leave to File Amended Counterclaim, the Court considers Fifth Third's Motion to Strike.

## A. Motion to Strike

Fifth Third moves the Court to strike Matney's reply brief in support of his Motion for Leave to File Amended Counterclaim for four reasons, each of which the Court addresses in turn.[1]

### 1. Standard of Review

In opposition to the Motion to Amend, Fifth Third argues that the claims in Matney's proposed Amended Counterclaim would be futile because they could not withstand a motion to dismiss. As noted above, the standard for the futility of a proposed amended pleading is the same standard of legal sufficiency that applies under Federal Rule of Civil Procedure 12(b)(6). In that response brief, Fifth Third cites the proper standard for a motion to dismiss for failure to state a claim under Rule 12(b)(6) as articulated by the United States Supreme Court in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555-56 (2007), and *Ashcroft v. Iqbal*, 556 U.S. 662, 677-78 (2009).

---

[1] In its own reply brief, Fifth Third abandons its argument that Matney's reply brief should be stricken as untimely, recognizing that Matney's reply was timely filed because the date it was due under the rules fell on a federal holiday (Columbus Day), thus making the deadline the following day, October 9, 2012. *See* Fed. R. Civ. P. 6(a)(1)(C).

However, in his reply in support of the Motion to Amend, Matney inexplicably contests the standard set out in *Bell Atlantic v. Twombly*, arguing that the standard is inapplicable because *Twombly* dealt with the pleading requirements for a claim under § 1 of the Sherman Act. Matney fails to acknowledge that the Supreme Court, two years later in 2009 in *Ashcroft v. Iqbal*, held that the standard of review in *Twombly* applies in all civil cases. 556 U.S. at 684. Moreover, the *Twombly/Iqbal* standard applies equally to complaints and counterclaims. *See e.g.*, *Heartland Recreational Vehicles, LLC v. Forest River, Inc.*, 3:11-CV-250, 2012 WL 4050301, *2-3 (N.D. Ind. Sept. 12, 2012); *Illini State Trucking, Inc. v. Carmeuse Lime, Inc*, 2:10-CV-21, 2012 WL 162538, *2 (N.D. Ind. Jan. 18, 2012). Co-Defendant Meyer's argument, adopted by Matney, that "[t]he same reasons for not applying the [*Twombly/Iqbal*] standard to affirmative defenses would apply to counterclaims," is unsupported by any citation to law, reasoning, or argument.

Fifth Third argues that the failure to cite the proper legal standard for a motion to dismiss is grounds for striking the reply brief. The Court disagrees and denies the Motion to Strike on this basis. The Court will consider the Motion to Amend, the response, and the reply under the proper legal standards.

2.      *Evidence Outside the Record*

As set forth above, the applicable standard under 12(b)(6) tests the sufficiency of the proposed pleading and not the merits of the claims. Thus, in deciding whether Matney's proposed Amended Counterclaim is futile because it cannot withstand a motion to dismiss, the Court evaluates the sufficiency of the proposed Amended Counterclaim and the documents attached to it and does not examine evidence outside the pleadings. *Reger Dev., LLC v. Nat'l City Bank*, 592 F.3d 759, 764

(7th Cir. 2010); Fed. R. Civ. P. 10(c). However, the Court may consider documents incorporated by reference in the pleadings. *United States v. Wood*, 925 F.2d 1580, 1581-82 (7th Cir. 1991).

In support of his reply brief on the Motion to Amend, Matney attaches several exhibits not attached to the proposed Amended Counterclaim. Exhibits 1 and 2 are not specifically incorporated by reference in the proposed Amended Counterclaim. The Court **GRANTS** the Motion to Strike as to Exhibits 1 and 2 (Docket entries 137-1 and 137-2). However, Exhibit 3 is a copy of the Subordination and Stand-By Agreement entered into by Matney, Lasco, and Fifth Third, which is incorporated by reference in the proposed Amended Counterclaim in paragraphs 11 and 36. The Court **DENIES** the Motion to Strike as to Exhibit 3 to Matney's Reply Brief (Docket entry 137-3).

Matney suggests that, rather than striking the documents, the Court convert Fifth Third's response brief into a motion for summary judgment in order to consider the documents submitted with Matney's reply brief. Although a court may convert a Rule 12(b)(6) motion to dismiss into a motion for summary judgment if "matters outside the pleadings are presented to and not excluded by the court," Fed. R. Civ. P. 12(d), there is not currently pending a motion to dismiss for the Court to convert. Moreover, the proposed Amended Counterclaim is not yet a pleading filed with this Court; thus, there is no pleading to which a motion for summary judgment could be applied.

3.    *Exceeds Page Limit*

Fifth Third argues that Matney's 20-page reply brief should be stricken because it is five pages over the 15-page limit imposed by Northern District of Indiana Local Rule 7-1(e)(1) and because Matney did not seek leave of Court to file the oversized brief by presenting "extraordinary and compelling reasons" for the additional pages. Matney responds that the reply brief was elongated due to pagination and paragraph skipping problems and, in addition, that extraordinary

and compelling reasons require allowing the few extra pages. Although the brief is oversize, because the Court disregards all arguments related to the stricken evidence and the discovery dispute (as set forth in the next section), the brief will be significantly reduced in length. The brief contains legal argument unrelated to the stricken evidence, and the Court prefers to make determinations on the merits rather than on procedural deficiencies. Therefore, the Court denies the Motion to Strike on this basis.

4.      *Discovery Dispute*

Finally, Matney asserts in his reply brief in support of the Motion to Amend that there is an ongoing discovery dispute with Fifth Third and suggests that the Court must first make determinations and a ruling regarding the adequacy of Fifth Third's discovery responses before any ruling is issued on Fifth Third's response to the Motion to Amend. In the Motion to Strike, Fifth Third denies that there is any discovery dispute and asks the Court to strike the reply brief as an improper method for raising a discovery dispute.

The Federal Rules of Civil Procedure and the Local Rules of the United States District Court for the Northern District of Indiana govern the procedure for bringing a discovery dispute before the Court, including the filing of a motion, a supporting brief, and a certification specifically detailing the parties' attempts to resolve the discovery dispute informally before seeking Court intervention. Matney has not complied with these requirements in his reply brief. To the extent Matney required Court assistance with discovery, Matney did not do so either at the time the discovery dispute arose or prior to filing the instant Motion to Amend. Nevertheless, this is not a basis on which to strike the reply brief, and the Court denies the Motion to Strike based on this argument. To the extent that Matney raises a discovery dispute in his reply brief in support of his Motion to Amend, the Court

disregards those arguments and makes no ruling on the merits of any discovery dispute between Matney and Fifth Third. This would have been the Court's ruling even in the absence of the instant Motion to Strike.

**B. Motion to Amend Counterclaim**

The Court now turns to the merits of Matney's Motion for Leave to File Amended Counterclaim. In the instant motion, Matney seeks leave of Court to amend his Counterclaim against Fifth Third, explaining that, as the result of discovery that has been produced by Fifth Third and other parties involved in the litigation, Matney has learned additional facts unknown to him at the time of filing the original Counterclaim. The proposed Amended Counterclaim withdraws the civil conspiracy and the breach of duty of good faith and fair dealing claims alleged in the original Counterclaim. The proposed Amended Counterclaim purports to seek damages based on the legal theories of constructive fraud, negligence, breach of contract, and tortious interference with contractual relationship. Fifth Third opposes the proposed Amended Counterclaim on the basis that the amendment would be futile, arguing that the pleading could not withstand a motion to dismiss because it fails to include any of the facts that Matney allegedly has learned and that it contains only formulaic recitations of the elements of ill-pled claims. The Court considers each of Fifth Third's objections in turn.

*1.    Constructive Fraud*

a.    Elements of a claim of constructive fraud

 "Constructive fraud arises by operation of law from a course of conduct which, if sanctioned by law, would secure an unconscionable advantage, irrespective of the existence or evidence of actual intent to defraud." *Demming v. Underwood*, 943 N.E.2d 878, 892 (Ind. Ct. App. 2011)

(quoting *Kreighbaum v. First Nat. Bank & Trust*, 776 N.E.2d 413, 420 (Ind. Ct. App. 2002)); *see also Mullen v. Cogdell*, 643 N.E.2d 390, (Ind. Ct. App. 1994) (citing *Paramo v. Edwards*, 563 N.E.2d 595, 598 (Ind. 1990)).  The elements of constructive fraud are:

> (i) a duty owing by the party to be charged to the complaining party due to their relationship; (ii) violation of that duty by the making of deceptive material misrepresentations of past or existing facts or remaining silent when a duty to speak exists; (iii) reliance thereon by the complaining party; (iv) injury to the complaining party as a proximate result thereof; and (v) the gaining of an advantage by the party to be charged at the expense of the complaining party.

*Demming*, 943 N.E.2d at 892 (quoting *Rice v. Strunk*, 670 N.E.2d 1280, 1284 (Ind. 1996); citing *Kreighbaum*, 776 N.E.2d at 421).

Fifth Third argues that Matney's constructive fraud claim could not withstand a motion to dismiss because Matney fails to plead any facts that, if taken as true, establish that a special relationship exists between him and Fifth Third.  A plaintiff alleging the existence of constructive fraud "must prove a fiduciary or fiduciary-like relationship to establish constructive fraud." *In re Rueth Dev. Co.*, 976 N.E.2d 42, 52 (Ind. Ct. App. 2012) (quoting *Cash in a Flash, Inc. v. McCullough*, 853 N.E.2d 533, 538 (Ind. Ct. App. 2006)); *see also Mudd v. Ford Motor Co.*, 178 F. App'x 545, 547 (7th Cir. 2006).  A duty owed to the complaining party "may arise in one of two ways:  by virtue of the existence of a fiduciary relationship, or in the case where there is a buyer and a seller, where one party may possess knowledge not possessed by the other and may thereby enjoy a position of superiority over the other." *Strong v. Jackson*, 777 N.E.2d 1141, 1146 (Ind. Ct. App. 2002) (quoting *Epperly v. Johnson*, 734 N.E.2d 1066, 1073 (Ind. Ct. App. 2000)).  "A confidential or fiduciary relationship exists when confidence is reposed by one party in another with resulting superiority and influence exercised by the other." *Estates of Kalwitz v. Kalwitz*, 717 N.E.2d 904, 914 (Ind. Ct. App. 1999).  "[T]he question of whether a confidential relationship exists is one of fact

to be determined by the finder of fact." *Id.* (citing *Dawson v. Hummer*, 649 N.E.2d 653, 661 (Ind. Ct. App. 1995)).

The mere existence of a relationship between a lender and its borrower does not create a special relationship of trust or confidence. *DeSimone v. Quicken Loans, Inc.*, No. 1:09-CV-1421, 2011 WL 2470642, *7 (S.D. Ind. June 20, 2011) (quoting *Am. Heritage Banco v. Cranston*, 928 N.E.2d 239, 246 (Ind. Ct. App. 2010); *Wilson v. Lincoln Fed. Sav. Bank*, 790 N.E.2d 1042, 1047 (Ind. Ct. App. 2003)); *Huntington Mortg. Co. v. DeBrota*, 703 N.E.2d 160, 167 (Ind. Ct. App. 1998) ("Mortgages do not transform a traditional debtor-creditor relationship into a fiduciary relationship absent an intent by the parties to do so.") (citing *Judd v. First Fed. Sav. and Loan Ass'n*, 710 F.2d 1237, 1241 (7th Cir. 1983)); *Block v. Lake Mortg. Co., Inc.*, 601 N.E.2d 449, 452 (Ind. Ct. App. 1992) ("A fiduciary relationship does not exist between a lender and a borrower unless certain facts exist which establish a relationship of trust and confidence between the two."). Duties do not arise out of a garden-variety "arms-length, contractual arrangement." *Comfax Corp. v. N. Am. Van Lines, Inc.*, 587 N.E.2d 118, 125-26 (Ind. Ct. App. 1992).

Fifth Third contends that Matney has pled nothing more than an arms-length commercial lending transaction and that no fiduciary relationship can exist on these facts. In response, Matney argues that a special relationship exists because Fifth Third has been engaged in a joint venture with Minas and his entities.

In the proposed Amended Counterclaim, Matney alleges that Fifth Third was a lender and then concludes that Matney, Meyer, Minas, and Fifth Third were in a joint venture. "Under Indiana law, a joint venture is an association of two or more parties formed to carry out a single business enterprise for profit, and it involves only a single transaction." *Yessenow v. Hudson*, No. 2:08-CV-

14

353, 2012 WL 2990643, *10 (N.D. Ind. July 19, 2012) (quoting *Lauth Ind. Resort & Casino, LLC v. Lost River Dev., LLC*, 889 N.E.2d 915, 920, 922 (Ind. Ct. App. 2008)).  In order for a joint venture to exist, "the parties must be bound by an express or implied contract providing for (1) a community of interests, and (2) joint or mutual control, that is, an equal right to direct and govern the undertaking." *Id.* (quoting *Wilson v. Am. Trans Air, Inc.*, 874 F.2d 386, 392 (7th Cir. 1989) (citations and quotation marks omitted)).  All of the facts Matney alleges and argues in support of a joint venture involve Fifth Third and *Minas*.  Even if the existence of a joint venture between Fifth Third and Minas has been sufficiently alleged, which the Court need not decide, Matney has not alleged that Fifth Third has engaged in a joint venture with *Matney* from which a special relationship could be found to exist for purposes of establishing a duty flowing from Fifth Third to Matney for the claim of constructive fraud.  For example, Matney argues that there was a "unique, confidential and secretive relationship that existed (and continues to exist) between the bank on the one hand and *Minas* on the other."  Matney Reply, p. 8 (emphasis added).

Matney also cites law regarding the duty that may arise through a buyer/seller relationship when one party possesses knowledge not possessed by the other.  Reply, p. 12 (citing *Wells v. Stone City Bank*, 691 N.E.2d 1246, 1251 (Ind. Ct. App. 1998); *Mullen*, 643 N.E.2d at 401).  In *Wells*, the Indiana Court of Appeals declined to hold that the relationship between a bank and a checking account holder is always necessarily a fiduciary one, but found that the relationship does invoke a duty of good faith and fair dealing to at least the same extent as does a buyer-seller relationship.  691 N.E.2d at 1251.  The court reasoned that, because a bank is inherently in a position superior to its checking account holders, that relationship is sufficient to support an inference of fraud.  *Id.*  In *Mullen*, the court found that there was no fiduciary relationship between the parties because they

were involved in arms-length negotiations resulting in the formation of a contract. 643 N.E.2d at 401. However, the court recognized that a claim of constructive fraud may arise when the relationship between the parties is that of buyer and seller because one party may be in the unique possession of knowledge not possessed by the other and may thereby enjoy a position of superiority over the other. *Id.*

Neither of these circumstances applies to the instant allegations. Matney's alleged relationship with Fifth Third was as a member of Double Tree, a borrower on a loan for the purchase of the development. "A fiduciary relationship does not exist between a lender and a borrower unless certain facts exist which establish a relationship of trust and confidence between the two." *Block*, 601 N.E.2d at 452. Matney has not alleged any facts establishing a relationship of trust and confidence between Matney and Fifth Third at the time Matney signed the personal guaranty.

Matney also cites *A.I. Credit Corp. v. Legion Ins. Co.*, 265 F.3d 630, 635-36 (7th Cir. 2001), for the statement that a special relationship may arise out of a course of dealing in which the party with knowledge provides information and the other party relies on it. However, Matney does not make any allegations in his proposed Amended Counterclaim of what information Fifth Third Bank had but did not disclose to Matney upon which Matney relied to his detriment. Matney recognizes that the "statements that give rise to constructive fraud generally are misrepresentations or omissions of objective facts and occur during the business transaction rather than after it." Reply, p. 13 (citing *Wells*, 691 N.E.2d at 1251; *Stoll v. Grimm*, 681 N.E.2d 749, 757-58 (Ind. Ct. App. 1997); *Mullen*, 643 N.E.2d at 401; *Goodwin v. DeMotte*, 116 N.E. 17 (Ind. App. 1917)). Yet, all of the acts Matney alleges that Fifth Third took to involve itself inappropriately in the operation of Double Tree are events that took place *after* Matney signed the personal guaranty. Matney argues that Fifth Third

16

kept him in the dark regarding ongoing financial dealings with Minas yet is obligating Matney to repay over $13 million in debt. The "new and renewing loan facilities" for which Matney argues that Fifth Third is holding him liable are not loans made to Matney or even guaranteed by Matney but rather loans made by Fifth Third to Minas and his entities. Matney's argument circles back to the fact of the "previously signed guaranty." Matney Reply, p. 13. The signing of the guaranty appears to be an arms-length transaction, and Matney has not alleged any facts to indicate otherwise.

Matney also alleges in the proposed Amended Counterclaim that he was excluded from communication and remained in an informational vacuum as additional loans were made by Fifth Third to Minas and the Double Tree Enterprise. In his brief, Matney argues that Fifth Third's silence deceived him and violated a private confidence. However, Matney offers no allegations in the proposed Amended Counterclaim itself as to *how* he relied on this silence by Fifth Third and how he was injured as a result of his reliance. In contrast, Matney argues in his reply brief that Fifth Third's exercise of superiority and influence over him by putting him an informational vacuum prevented Matney from taking action to stop the new loans being made to Minas. Additional allegations regarding the special relationship that may have arisen after the guaranty and how Matney relied on Fifth Third's silence to his detriment after the special relationship arose are necessary in order for Matney to state a claim for constructive fraud.

Matney's proposed Amended Counterclaim alleges facts that Fifth Third owed a duty to Matney based on their contractual relations as lender and borrower. Matney has not alleged any facts to show a relationship of trust and confidence on which he relied. Thus, because Matney's constructive fraud claim in the proposed Amended Counterclaim would not survive a motion to dismiss as pled, the Court **DENIES** the Motion to Amend to the extent it seeks to allege a claim of

constructive fraud.  However, the Court **GRANTS** Matney leave to plead additional factual allegations to cure these deficiencies as well as to cure the pleading deficiencies set forth in the following section.

b.      Heightened pleading standard for fraud

Fifth Third argues that Matney's proposed claim of constructive fraud fails to allege the who, what, where, when, why, and how required by the Federal Rules of Civil Procedure for a claim of fraud.  Federal Rule of Civil Procedure 9(b) provides: "In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake.  Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally." Fed. R. Civ. P. 9(b).  The Rule 9(b) standard "ensure[s] that the party accused of fraud, a matter implying some degree of moral turpitude and often involving a 'wide variety of potential conduct,' is given adequate notice of the specific activity that the plaintiff claims constituted the fraud so that the accused party may file an effective responsive pleading."  *Lachmund v. ADM Investor Servs.*, 191 F.3d 777, 783 (7th Cir. 1999) (quoting 5 Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1296, at 580 (2d ed. 1990)).  "Particularity, for Rule 9(b) purposes, means that a plaintiff must ordinarily describe the who, what, when, where, and how of the fraud–the first paragraph of any newspaper story."  *Gagan v. United Consumers Club, Inc.*, No. 2:10-CV-26, 2012 WL 729943, *6 (N.D. Ind. Mar. 6, 2012) (internal quotation marks omitted) (quoting *Pirelli Armstrong Tire Corp. Retiree Med. Benefits Trust*, 631 F.3d at 441-42 (7th Cir. 2011)).

Even if Matney had alleged facts in support of a special relationship on which he relied, Matney fails to plead the circumstances underlying the constructive fraud claim with sufficient

particularity as required by Rule 9(b). The allegations of paragraph 30 are a boilerplate recitation of the elements of a constructive fraud claim:

> The actions of 5/3 constitute constructive fraud upon Matney based upon the fact that 5/3 owed (i) a duty to Matney due to their relationship; (ii) violated that duty by the making of deceptive material misrepresentations of past or existing facts and/or remaining silent when a duty to speak existed; (iii) that Matney relied upon 5/3; (iv) that Matney was injured as a proximate result thereof; and (v) the Bank gained an advantage at the expense of Matney. All of the foregoing caused Matney to suffer pecuniary losses for which he is entitled to recovery.

Proposed Am. Counterclaim, ¶ 30 (docket entry 134-1). Matney does not identify who at Fifth Third took the purported actions and omissions. He does not identify when or where the alleged actions took place, what Fifth Third specifically did, or how Fifth Third accomplished the allegedly wrongful conduct. *See Schott v. Huntington Nat'l Bank*, No. 1:12-CV-430, 2012 WL 6725902, *7-8 (S.D. Ind. Dec. 27, 2012) (citing *Winforge, Inc. v. Coachmen Indus., Inc.*, No. 1:06-CV-619, 2007 WL 854025 (S.D. Ind. Mar. 13, 2007)); *Taylor v. Feinberg*, No. 08-CV-5588, 2009 WL 3156747, *5 (N.D. Ill. Sept. 28, 2009). Although Matney "was not required to . . . allege the facts necessary to show that the alleged fraud was actionable," Rule 9(b) does require that it "set forth the date and content of the statements or omissions that it claimed to be fraudulent." *Midwest Commerce Banking Co. v. Elkhart City Ctr.*, 4 F.3d 521, 524 (7th Cir. 1993) (citations omitted). The Court finds that the proposed Amended Counterclaim fails to meet Rule 9(b)'s particularity requirement.

Although Matney names in his reply brief a few of the Fifth Third loan officers he alleges deceived and misled him and refers to a written position statement provided to Fifth Third prior to the filing of the instant motion, all allegations of a claim of fraud must be in the pleading itself and cannot be supplemented by a responsive brief. *MDG Intern., Inc. v. Australian Gold, Inc.*, No. 1:07-CV-1096, 2008 WL 3982072, *2 (S.D. Ind. Aug. 22, 2008). Matney argues, without citation to law,

that Rule 9(b) is not applicable when the facts in support of his claim of constructive fraud are "within the scope of the bank's knowledge." Reply, p. 6. Although an exception to Rule 9(b) allows facts to be pled based on information and belief when the facts are peculiarly within the opposing party's knowledge, such allegations much be accompanied by a statement of the facts upon which the belief is founded. *See Bankers Trust Co. v. Old Republic Ins. Co.*, 959 F.2d 677, 684 (7th Cir. 1992); *Duane v. Altenburg*, 297 F.2d 515, 518 (7th Cir. 1962). Matney has not recited this requirement nor attempted to meet it. Should Matney decide to add additional allegations necessary to state a claim for constructive fraud as set forth in the preceding section, Matney is also **GRANTED** leave to allege the additional facts necessary under Rule 9(b) to state the claim with the requisite particularity.

2.      *Negligence*

a.      Economic loss doctrine

Fifth Third argues that Matney's negligence claim is barred by the economic loss doctrine because Matney seeks damages for solely pecuniary losses he allegedly suffered. Under Indiana law, the tort of negligence renders a defendant liable to a plaintiff if "(1) the defendant has a duty to conform its conduct to a standard of care arising from its relationship with the plaintiff, (2) the defendant failed to conform its conduct to that standard of care, and (3) an injury to the plaintiff was proximately caused by the breach." *Indianapolis-Marion Cnty. Pub. Library*, 929 N.E.2d 722, 726 (Ind. 2010). When the "injury to the plaintiff is from a defective product or service . . . , the defendant is liable under a tort theory if the defect causes personal injury or damage to property other than the product or service itself." *Id*. However, "a defendant is *not* liable under a tort theory for any purely economic loss caused by its negligence (including, in the case of a defective product

or service, damage to the product or service itself).” *Id.* at 726-27. The Indiana Supreme Court explains that, “[t]his rule precluding tort liability for purely economic loss–that is, pecuniary loss unaccompanied by any property damage or personal injury (other than damage to the product or service itself)–has become known as the ‘economic loss rule.’” *Id.* at 727. The Indiana Supreme Court has recognized exceptions to the economic loss doctrine, including but not limited to lawyer malpractice, breach of a duty of care owed to a plaintiff by a fiduciary, breach of a duty to settle owed by a liability insurer to the insured, and negligent misstatement. *U.S. Bank, N.A. v. Integrity Land Title* Corp., 929 N.E.2d 742, 745-46 (Ind. 2010) (citing *Indianapolis-Marion Cnty. Pub. Library*, 929 N.E.2d at 736).

In this case, Matney’s negligence claim seeks damages for solely pecuniary losses he has allegedly suffered. Matney alleges that Fifth Third took certain actions that reduced the value of his ownership interest in Double Tree Lake Estates LLC and caused him not to receive a cash payout contemplated by the Settlement Agreement between Matney and Minas. There are no allegations that Matney suffered injury to his person or to any property. However, Matney argues that two of the exceptions to the economic loss doctrine apply to his negligence claim: (1) negligent misrepresentation and (2) breach of fiduciary duty. As to the latter, Matney has not alleged any special or fiduciary relationship between Fifth Third and himself.

As for the former, Indiana has recognized liability for the tort of negligent misrepresentation. *Indianapolis-Marion Cnty. Pub. Library*, 929 N.E.2d at 741 (citing *Passmore v. Multi-Mgmt. Servs., Inc.*, 810 N.E.2d 1022, 1025 (Ind. 2004)). “[N]egligent misrepresentation may be actionable and inflict only economic loss.” *Id.* (citing *Greg Allen Constr. Co., Inc. v. Estelle*, 798 N.E.2d 171, 174 (Ind. 2003)). In *Indianapolis-Marion County Public Library*, the court found the exception

inapplicable because the plaintiff was "connected with the Defendants through a network or chain of contracts." *Id.* In another case decided the same date, *U.S. Bank, N.A. v. Integirty Land Title Corp.*, the court recognized the claim of negligent misrepresentation as an exception to the general economic loss doctrine when a mortgage lender *not* in privity of contract with a title company sought to recover for the title company's negligence in issuing a title commitment that failed to disclose an encumbrance. 929 N.E.2d at 745-46. As set forth below, the only contract invoked in the proposed Amended Counterclaim to which both Matney and Fifth Third are parties is the Subordination and Stand-By Agreement. Thus, if Matney does not have recourse for his alleged damages in that contract, then the exception for negligent misrepresentation may apply to Matney's negligence claims against Fifth Third. Fifth Third did not address the exceptions to the economic loss doctrine in its response brief. Therefore, Fifth Third has not demonstrated in response to the Motion to Amend that Matney's negligence claims would be futile under the economic loss doctrine.

      b.      Failure to state a claim

Fifth Third next argues that Matney's negligence claim is nothing more than a threadbare recital of the elements, supported only by conclusory statements. First, Fifth Third argues that Matney's allegation that Fifth Third owed him a duty is nothing more than a legal conclusion. However, the allegation that Fifth Third identifies–that Fifth Third had management or control over the Double Tree Enterprise–is not a legal conclusion but rather a factual conclusion. Fifth Third also argues that Matney simply concludes that he was damaged and that Matney fails to include any factual allegations that provide the grounds of how Matney was injured by Fifth Third's allegedly negligent conduct. However, Matney alleges in paragraph 18 that Fifth Third and Minas "intentionally and/or negligently misrepresented the number of lots in certain phases of the Double

Tree subdivision as a way to justify increasing the debt and global lending limits for the Double Tree Enterprise, all to the detriment of Matney, as there was a continual funneling of money to Minas, his many attorneys (both federal and state court), his accountants, and his affiliates." Proposed Am. Counterclaim, ¶ 18. Thus, on the basis of these arguments advanced in its response brief, Fifth Third has not demonstrated that the proposed negligence claim would be futile.

     c.     Statute of Limitations

Under Indiana law, a negligence action must be brought within two years of the date the cause of action accrues. Ind. Code § 34-11-2-4. "Under Indiana's discovery rule, a cause of action accrues, and the statute of limitations begins to run, when a claimant knows or in the exercise of ordinary diligence should have known of the injury." *Pflanz v. Foster*, 888 N.E.2d 756, 759 (Ind. 2008). "While a statute of limitations defense is not normally part of a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), when the allegations of the complaint reveal that relief is barred by the applicable statute of limitations, the complaint is subject to dismissal for failure to state a claim." *Logan v. Wilkins*, 644 F.3d 577, 582 (7th Cir. 2011).

In the proposed Amended Counterclaim, Matney alleges that Fifth Third's alleged wrongful conduct began in May 2007. Matney filed the instant motion over five years later. Fifth Third argues that the allegations in proposed paragraphs 13 and 14 demonstrate that Matney knew of the alleged negligent conduct as early as May 2007. Paragraph 13 alleges: "From May 2, 2007, through the present time, Minas and 5/3 have been in complete control of the Double Tree Enterprise, succeeding in having both Matney and Meyer removed from and excluded from management and operational control of the Double Tree subdivision, all of which is contrary to the executed Double Tree Operating Agreement." Proposed Am. Counterclaim, ¶ 13. Paragraph 14 alleges: "From May

2, 2007, through the present time, the Double Tree Enterprise which has been managed exclusively by 5/3 and Minas has been managed in a negligent fashion and such negligent mismanagement is the sole proximate and responsible cause for pecuniary losses suffered by the Double Tree Enterprise and Matney." *Id*. at ¶ 14. Neither of these paragraphs provides that Matney knew of these allegations beginning in May 2007; there is no allegation in the proposed Amended Counterclaim as to when Matney knew of his injury.

In his reply brief, Matney invokes the doctrine of fraudulent concealment, arguing that Fifth Third should be estopped from asserting the statute of limitations defense. "In Indiana, the doctrine of fraudulent concealment is available to estop a defendant from asserting the statute of limitations when the defendant has, either by deception or by violating a duty, concealed from the plaintiff material facts, preventing the plaintiff from discovering a potential cause of action." *Logan*, 644 F.3d at 582. In paragraphs16, 18, and 19, Matney alleges that Fifth Third hid facts that form the basis of his negligence claim. It is unnecessary for the Court to consider the applicability of the defense at this stage of the litigation because Fifth Third's identification of the allegations in paragraphs 13 and 14 of the proposed Amended Counterclaim, by themselves, do not reveal that relief is barred by the applicable statute of limitations. Although it is possible that Matney knew of his injury as early as May 2007, especially in light of the 2008 arbitration proceedings and the April 2009 Settlement Agreement, the Court cannot say, based on the arguments currently asserted, that the proposed Amended Counterclaim "establishes" that the claim is time barred. *Logan v. Wilkins*, 644 F.3d at 582. As a result, the Court declines to find on this Motion for Leave to File Amended Counterclaim that any negligence claim is barred by the statute of limitations.

Because Fifth Third has not demonstrated on the arguments asserted in its response brief that Matney's proposed negligence claim would be futile, the Court **GRANTS** the Motion to Amend as to Matney's negligence claim.

3.     *Breach of Contract*

Fifth Third argues that Matney fails to allege facts in support of a breach of contract claim. In his reply brief, Matney asserts a claim for breach of contract as to both the Settlement Agreement and the Subordination and Stand-by Agreement. The Court considers each in turn.

The proposed Amended Complaint alleges that, on April 9, 2009, Matney and Minas entered into a Settlement Agreement that called for cash payments to Matney as well as payments to Lasco and other[s] by way of defense and indemnification totaling millions of dollars. . . . This Settlement Agreement, in part, was to take care of the bank's failure to enforce its rights and obligations pursuant to [a] Subordination Agreement between Matney, Lasco, and 5/3." Proposed Am. Counterclaim ¶ 36. However, because Fifth Third is not a party to the Settlement Agreement, the claim would be futile because there can be no breach of contract claim against Fifth Third based on the Settlement Agreement. *DiMizio v. Romo*, 756 N.E.2d 1018, 1021-22 (Ind. Ct. App. 2001) ("A person typically cannot be held liable for breach of contract unless it is shown that she was a party to the contract.").

Based on the allegations in paragraph 36, Fifth Third was a party to the Subordination and Stand-by Agreement. However, there are no allegations in the proposed Amended Counterclaim that Fifth Third breached the Subordination and Stand-by Agreement. Rather, Matney alleges that Fifth Third breached the Settlement Agreement by failing to foreclose on the Subordination and Stand-by Agreement as a condition precedent of the Settlement Agreement. Thus, because there are

no factual allegations that Fifth Third breached the Subordination and Stand-by Agreement itself, a claim for breach of contract based on the Subordination and Stand-by Agreement would be futile.

Accordingly, the Court **DENIES** the Motion to Amend to the extent Matney alleges a breach of contract claim. The Court **GRANTS** Matney leave to include additional allegations in the Amended Counterclaim to state a claim for breach of contract based on the Subordination and Stand-by Agreement.

4.    *Tortious Interference with Contractual Relationship*

Fifth Third argues that Matney recites only the legal elements of a claim for tortious interference with contractual relationship and fails to allege any facts in support of the claim. Fifth Third contends that Matney does not include the grounds on which his claim rests, including how or when Fifth Third purportedly caused a breach of the Settlement Agreement or of the Subordination and Stand-by Agreement. Indiana law recognizes the tort of tortious interference with contract, the elements of which are: (1) the existence of a valid and enforceable contract; (2) defendant's knowledge of the existence of the contract; (3) defendant's intentional inducement of breach of the contract; (4) the absence of justification; and (5) damages resulting from defendant's wrongful inducement of the breach. *Levee v. Beeching*, 729 N.E.2d 215, 221 (Ind. Ct. App. 2000) (citing *Biggs v. Marsh*, 446 N.E.2d 977, 983 (Ind. Ct. App. 1983)). In his reply brief, Matney asserts that his claim of tortious interference with contract is based on both the Settlement Agreement and the Subordination and Stand-by Agreement. The Court considers each in turn.

In the proposed Amended Counterclaim, Matney alleges the existence of the Settlement Agreement as a valid contract and that Fifth Third had knowledge of the Settlement Agreement. Matney alleges in paragraphs 37 and 39 that, because Fifth Third failed to foreclose on the

26

Subordination and Stand-by Agreement, which was a condition precedent of the Settlement Agreement, Minas breached the Settlement Agreement. Matney further alleges that the Settlement Agreement was a "stall and delay tactic" by Minas and Fifth Third to allow further equity to be removed from the Double Tree Enterprise. Matney alleges that Fifth Third voluntarily and with full knowledge chose not to perform its obligations, and Matney alleges that Fifth Third caused the breach of the Settlement Agreement without justification. Finally, Matney alleges that he has been damaged with regard to his defense and indemnification of obligations to Lasco, which total more than $2.6 million. Based on Fifth Third's argument and the allegations in the proposed Amended Counterclaim, Fifth Third has not demonstrated that Matney's tortious interference with contract claim based on the Settlement Agreement would be futile. Accordingly, the Court **GRANTS** the Motion to Amend as to this claim for tortious interference with contract as to the Settlement Agreement.

Fifth Third is a party to the Subordination and Stand-by Agreement. Matney recognizes in his reply brief that a "party cannot 'interfere' with its own contracts." *Trail v. Boys and Girls Clubs of NW Ind.*, 845 N.E.2d 130, 138 (Ind. 2006). However, he also notes that a party to a contract may be liable if the party conspired with another to tortiously interfere with its contract. *Winkler v. V.G. Reed & Sons, Inc.*, 619 N.E.2d 597, 600 (1993) (citing *Wade v. Culp*, 23 N.E.2d 615 (Ind. App. 1939)). Matney makes several allegations in the proposed Amended Counterclaim that Fifth Third conspired with Minas, who was not a party to the Subordination and Stand-by Agreement. However, all of those allegations pertain to a conspiracy to interfere with the Settlement Agreement. There are no allegations that Fifth Third tortiously interfered with the Subordination and Stand-by

Agreement or that Fifth Third conspired with Minas to interfere with the Subordination and Stand-by Agreement.

Yet, in his reply brief, Matney explains that the Subordination and Stand-by Agreement was designed to subordinate Lasco from being paid any monies he fronted for the original purchase price of the Double Tree development until such time that Fifth Third was paid in full for all indebtedness from all of the various loan facilities and interest lines. Matney asserts that the Subordination and Stand-by Agreement provides that Fifth Third must be paid all monies due and owing to it before repayment of monies to Lasco, that in 2005 and 2006 millions of dollars of lot sales were successfully accomplished and the first three loans given by Fifth Third were "effectively" paid off, that none of the money from those revenue streams was directed by Fifth Third to pay Lasco, and that Fifth Third and Minas worked in secret to direct more money to Minas for other land, both at Double Tree and elsewhere. Matney argues that when Fifth Third issued the several letters of default for failure to pay all debts due and owing, it refused to comply with the terms of the Subordination and Stand-by Agreement. Matney contends that the failure to protect Matney's property rights by failing to foreclose any rights Lasco had under the Subordination and Stand-by Agreement was a conscious and deliberate decision on the part of Fifth Third. However, none of these arguments are included as allegations in the proposed Amended Counterclaim.

Accordingly, the Court **DENIES** the Motion to Amend as to the claim for tortious interference with contract as to the Subordination and Stand-by Agreement as drafted but **GRANTS** Matney leave to incorporate additional allegations in his Amended Counterclaim to allege facts in support of a claim of tortious interference with contract based on the Subordination and Stand-by Agreement.

**CONCLUSION**

Based on the foregoing, the Court hereby **GRANTS in part and DENIES in part** Plaintiff Fifth Third Bank's Motion to Strike Defendant Kenneth Matney's Reply in Support of His Motion for Leave to File Amended Counterclaim [DE 139] and **GRANTS in part** and **DENIES in part** the Motion for Leave to File Amended Counter-Claim Against Fifth Third Bank [DE 134]. The Court grants Defendant/Crossclaimant Kenneth Matney up to and including **February 26, 2013**, in which to **FILE** his Amended Counterclaim consistent with this Opinion and Order.

So ORDERED this 12th day of February, 2013.

s/ Paul R. Cherry
MAGISTRATE JUDGE PAUL R. CHERRY
UNITED STATES DISTRICT COURT

cc: All counsel of record