# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF INDIANA
## HAMMOND DIVISION

| | |
|---|---|
| FIFTH THIRD BANK, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | )    NO: 2:11-cv-0233-PPS-PRC |
| | ) |
| DOUBLE TREE LAKE ESTATES, LLC, | ) |
| *et al.*, | ) |
| Defendants. | ) |
| _____ | ) |
| | ) |
| KENNETH MATNEY, | ) |
| | ) |
| Counter-Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) |
| FIFTH THIRD BANK, | ) |
| | ) |
| Counter-Defendant. | ) |

## OPINION, MEMORANDUM, AND ORDER

This matter is before the court on Fifth Third Bank and Kenneth Matney's Cross-

Motions for Summary Judgment. This case arises out of a real estate transaction gone

wrong. In 2004, Kenneth Matney and some partners bought a residential real estate

development called Double Tree Lake Estates in Crown Point, Indiana. The purchasers

borrowed money from Fifth Third Bank to complete the transaction, and, as part of the

deal with the bank, Matney personally guaranteed repayment of the loan. Over the

next couple of years, Double Tree continued to borrow money from Fifth Third, and

Matney continued to guarantee repayment. Unfortunately, the development never

really took off as the partners had hoped, and Double Tree defaulted on the loans in 2011.

Fifth Third Bank filed this lawsuit attempting to recover on the promissory notes issued by Double Tree, as well as the guaranties signed by Matney and his business partners, specifically the guaranties each partner signed in 2004. In return, Matney has filed counterclaims against Fifth Third Bank more-or-less alleging that the bank is responsible for Matney's fall-out with his partners. He claims the bank is liable to him under various theories including negligence and breach of contract.

Matney has filed a motion for summary judgment in which he argues that he is not liable under the 2004 guaranty agreement because that agreement was superseded and replaced by other, later, guaranty agreements (DE 185). Fifth Third acknowledges that this is true, but has moved for summary judgment on the grounds that Matney is liable to the bank under a 2006 guaranty agreement (DE 183). Fifth Third has also moved for summary judgment with respect to Matney's counterclaims.

For reasons I'll elaborate below, I agree with Matney that he cannot be liable under the 2004 guaranty. On the other hand, I agree with Fifth Third that Matney's counterclaims are insufficient as a matter of law. Accordingly, Matney's motion for summary judgment (DE 185) is **GRANTED**. Fifth Third's motion for summary judgment (DE 183) is also **GRANTED.**

# BACKGROUND

In May 2004, Kenneth Matney, along with Anthony Meyer and Randy Minas, bought a residential real estate development known as Double Tree Lake Estates from developer David Lasco (DE 157 ¶¶ 6-8). The three partners formed Double Tree Lake Estates, LLC ("Double Tree"), and Fifth Third Bank lent the new company the funds needed to finance the purchase (DE 157 ¶¶ 6-8; DE 184-4; DE 187-2 at 2). In return, Double Tree gave the bank a promissory note in the amount of $12,254,000.00 (DE 184-4). I will refer to this as "Note One." To secure repayment of Note One, Matney and the partners each executed a personal Guaranty of Payment and Completion dated May 7, 2004 (DE 187-2 at 2-3; DE 184-5). I'll refer to Matney's guaranty as the "2004 Guaranty." In the 2004 Guaranty, Matney unconditionally and irrevocably guaranteed full repayment of Note One (DE 184-5).

The partners couldn't finance the entire purchase price of the development by themselves, so, in addition to the bank loan, Matney also entered into a side-deal with David Lasco (the seller) (DE 187-2 at 3). Matney personally borrowed nearly $2 million from Lasco to make up the difference between the development's purchase price and what Double Tree was able to borrow from Fifth Third. *Id.* Lasco, Matney, and the bank entered into a Subordination and Stand-by Agreement under which Lasco agreed to subordinate $1.5 million of the total owed him by Matney to the repayment of Note One (DE 187-5). The agreement provided that Lasco could not demand or receive from

Matney any part of the $1.5 million that Matney owed to Lasco until Double Tree paid off all of its obligations to the Bank. *Id.*

As the partners tried to get Double Tree up and running, Fifth Third made additional loans. In February and October 2005, Fifth Third and Double Tree amended their original loan agreement by adding term loans of $600,000.00 and $1,960,000.00 (DE 187-8 - DE187-10). On May 8, 2006, Double Tree borrowed another $3.8 million from Fifth Third to purchase more land, executing a mortgage note for that amount ("Note Two") (DE 187-2 at 4; DE 184-2 at 2). To secure the note, Matney executed another guaranty agreement ("May 2006 Guaranty"), guaranteeing Double Tree's repayment of Note Two (DE 184-7).

On August 3, 2006, Double Tree borrowed additional money in the form of a $2,945,000.00 development loan ("Note Three") and a $730,000.00 acquisition loan ("Note Four") (DE 184-8; 184-10). This time, the loan agreement consolidated all of the previous agreements into one agreement, which the parties have called "the Amended and Restated Loan Agreement" (DE 188-8). In turn, Matney signed an Amended and Restated Unlimited Continuing Guaranty ("August 2006 Guaranty"), which consolidated all of his previous guaranties into one. Importantly, the consolidated agreement expressly superseded all previous agreements between Fifth Third and Matney (DE 184-9). Here is what it says: "This Guaranty supersedes all previous agreements and commitments made by Lender and Guarantor with respect to Obligations and all other subjects of the Guaranty, including, without limitation, any

4

oral or written proposals or commitments made by or issued by Lender." *Id*. at ¶ 17. Under the terms of the August 2006 Guaranty, Matney unconditionally and irrevocably guaranteed the repayment of all four notes owing to Fifth Third. *Id*. at ¶ 1.

Although Matney had originally been put in charge of the Double Tree's day-to-day operations, he and his partners eventually had a falling out, and at some point, Matney was forced out of the company. The circumstances of the split are disputed. Matney says he was removed from the management of Double Tree in September 2005 (DE 187-2 at 4). Yet that is belied by the fact that he signed the August 2006 Guaranty. What is also curious about the August 2006 guaranty is that during that same month – specifically, on August 15, 2006 – Matney took steps to end the relationship with Double Tree by sending Letters for Dissolution Event to Minas and Meyer (187-2 at 5; DE 189-6). Why Matney signed the 2006 Guaranty only to turn around and dissolve the business relationship that the guaranty relates to is completely unclear. In any event, the August 15, 2006 letters notified the partners that Matney intended to resign his membership interest in Double Tree and a related corporation, and that this constituted a "Dissolution Event" under the operating agreement (DE 189-6). After that, Matney entered into settlement negotiations with Randall Minas in order to wind down his share of the development (DE 187-2 at 6). The parties finally reached a settlement in April 2009 (DE 157 ¶ 56).

The bank does not go into the specifics of Matney's exit, except to say that Matney had "terminated his relationship" with Double Tree some time before June 27,

5

2007 (DE 184-2 at 3). June 2007 was when Double Tree engaged in another round of borrowing from Fifth Third. Matney was not involved in that transaction, so the bank claims that, at some unspecified time before June 2007, Matney left Double Tree and revoked his Guaranty, renouncing personal liability for any portion of the Loans made after his withdrawal from Double Tree. *Id.* As such, Fifth Third is not seeking to recover from Matney any of the debt Double Tree incurred after June 2007.

At some point, David Lasco breached the Subordination and Stand-by Agreement by suing Matney to recover the money Matney owed him. Lasco had obtained a $2,295,434.56 judgment against Matney by the time Matney and Minas settled their dispute on April 9, 2009 (DE 157-5 at 6).

After Matney's exit, Double Tree still soldiered on under the leadership of Randall Minas. Between June 2007 and June 2010, Double Tree and the bank entered into seven loan modification agreements. *Id.* at 3-4. Among other things, Double Tree borrowed more money, increasing the amount outstanding under Note One by $2,190,00.30. Double Tree and the Bank also entered into a forbearance agreement that extended the maturity dates of Notes One, Two, Three, and Four to January 5, 2011.

Whether due to mismanagement or the collapsing economy, Double Tree could not make its payments when January 5, 2011 rolled around, and the loans went into default.

## Procedural Background

Fifth Third filed this suit in June 2011 against Double Tree, the three partners and two related corporations DoubleTree Golf, LLC, and DBL Residential, L.P. (DE 1). The complaint alleged that Double Tree was liable under eight promissory notes and the partners liable under their 2004 guaranties. Fifth Third also sought to foreclose their security interests in the Double Tree property. *Id.* Plaintiff amended its complaint in February 2012 to correct some typos, but the substance of the claims remained the same (DE 78). What is puzzling is that Fifth-Third never amended its complaint against Matney to include a breach of the August 2006 Guaranty. Yet that is the last guaranty signed by Matney and it specifically superseded all previous guaranties. In other words, it is the only operative guaranty that is actionable by Fifth Third against Matney.

Matney filed a counterclaim in March 2012 (DE 86). In it, he alleged claims against Fifth Third for 1) breach of good faith and fair dealing, 2) tortious interference with a contract, and 3) civil conspiracy. *Id.* In September 2012, Matney sought to amend his counterclaim. The proposed amended counterclaim withdrew the conspiracy and breach of good faith claims and added claims of constructive fraud, negligence, and breach of contract (DE 134-1). Magistrate Judge Cherry issued an order granting Matney leave to amend, but setting certain limitations (DE 154). In the order, Judge Cherry denied, on grounds of futility, Matney's attempt to add a constructive fraud claim (DE 154 at 17-18). The negligence claim was allowed only to the extent Matney alleged negligent misrepresentation. *Id.* at 22 -23. Judge Cherry gave leave to add the

breach of contract claim, but only to the extent Matney alleged Fifth Third breached the Subordination and Stand-by Agreement. *Id.* at 25-26. Finally, Judge Cherry allowed the tortious interference claim to stand with respect to the breach of Matney's settlement agreement with Double Tree, but denied it to the extent it alleged interference with the Subordination and Stand-by Agreement. *Id.* at 27. In each case, he granted Matney leave to amend to allege additional facts supporting the rejected claim. *Id.* at 28.

In response, Matney filed a second amended counterclaim in February 2013 (DE 157), and this is the operative pleading. As I'll explain in more detail later on, Matney has not bothered to explicitly state his legal claims in this counterclaim. As far as I can tell, Matney has alleged Fifth Third is liable for breach of contract, tortious interference with a contract, negligence, negligent misrepresentation, and constructive fraud.

Matney is essentially the last man standing at this point in the litigation. Minas filed for bankruptcy, and the case has been stayed against him since January 2012 (DE 66). Anthony Meyer settled with Fifth Third and was dismissed in July 2013 (DE 177). And a court-appointed receiver has been overseeing the mortgaged assets of the corporate defendants since February 2012 (DE 85).

Presently before the court are cross-motions for summary judgment brought by Matney and Fifth Third, along with a slew of motions to strike (DE 195, 199, 204, 209, 216). At Matney's request, I held oral argument on the motions for summary judgment on March 6, 2014 (DE 223).

**DISCUSSION**

Summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A genuine dispute about a material facts exists only "if the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). In making this determination, I must construe all facts and draw all reasonable inferences from the record in the light most favorable to the nonmoving party. *See id.* at 255. Both parties have moved for summary judgment on Fifth Third's claim that Matney is liable under the 2004 Guaranty. I am going to address that issue first. After that, I'll address Fifth Third's motion for summary judgment with respect to Matney's counterclaims.

**A.      Matney's 2004 Guaranty**

Matney has moved for summary judgment on Fifth Third's claim based on the 2004 Guaranty. He argues that the 2004 Guaranty was superseded and replaced by the 2006 Guaranty. If that's true, Matney isn't liable to Fifth Third, at least under that particular contract. Fifth Third does not dispute this: "Matney and the Bank agree that the [2006 Guaranty] was a novation of prior guaranties executed by Matney . . . " (DE 194 at 1). Instead, Fifth Third claims they are entitled to summary judgment because Matney is liable under the 2006 Guaranty. The problem is that Fifth Third's amended complaint specifically alleges that Matney is liable under the 2004 Guaranty (DE 78 ¶¶ 25, 58-66). And this is a significant hitch.

Fifth Third claims that it doesn't matter. Even though the complaint alleged Matney was liable under the 2004 Guaranty, they argue that the complaint gave Matney sufficient notice of the claim under the 2006 Guaranty. According to Fifth Third, the notice was sufficient because the complaint alleged that Matney was liable for all of the loans Double Tree took out prior to June 2007 (DE 194 at 14). They argue that it is sufficient that Matney knew what he was allegedly liable *for* even if he didn't know precisely *why*. This is not enough. Guaranties are contracts and are governed by the same rules and principles applicable to the other contracts. *TW Gen. Contracting Servs., Inc. v. First Farmers Bank & Trust*, 904 N.E.2d 1285, 1288 (Ind. Ct. App. 2009); *Loudermilk v. Casey*, 441 N.E.2d 1379, 1383 (Ind. Ct. App. 1982). To put a plaintiff on notice of a breach of contract claim, the Plaintiff, at the very least, has to allege the existence of the contract that is supposed to have been breached. *DeliverMed Holdings, LLC v. Schaltenbrand*, 743 F.3d 616, 626 (7th Cir. 2013) (a plaintiff asserting a breach of contract claim must plead and prove the existence of the contract); *See Giddings v. Principal Fin. Group, Inc.*, 07-cv-370, 2009 WL 742681, at *7 (E.D. Wis. Mar. 18, 2009) (holding that a plaintiff had not put defendants on notice of a contract claim when the complaint alleged liability under a different contract than the one asserted at summary judgment); *Winder v. D.C.*, 555 F. Supp. 2d 103, 110-11 (D.D.C. 2008) (holding breach of contract theory introduced in summary judgment briefing was beyond the scope of the complaint) *aff'd sum nom. Winder v. Erste*, 566 F.3d 209 (D.C. Cir. 2009). Fifth Third's complaint only alleges liability under the 2004 Guaranty (DE 78 ¶¶ 25, 58, 60, 63, 66). It

does not even allude to any other guaranty. Fifth Third is not entitled to summary judgment on a breach of contract claim when it hasn't even alleged the existence the contract that was supposedly breached.

Matney, on the other hand, is entitled to summary judgment on this claim. Fifth Third cannot stave off summary judgment by pointing to a new basis for their claim. It is well-settled that a plaintiff cannot amend the complaint through briefs in opposition to summary judgment. *See Blubaugh v. Am. Contract Bridge League*, 117 F. App'x 475, 477 (7th Cir. 2004) (citing *Shanahan v. City of Chicago*, 82 F.3d 776, 781 (7th Cir. 1996)). That is essentially what Fifth Third is trying to do here, introducing a new claim based on a new contract in their briefs for summary judgment. This won't work. *See Giddings*, 2009 WL 742681, at 6; *Bassiouni v. CIA*, No. 02 C 4049, 2004 WL 1125919, at *8 (N.D. Ill. Mar. 31, 2004) ("A plaintiff cannot create a genuine issue of material fact, thereby precluding summary judgment, by raising facts for the first time in response to defendant's motion for summary judgment which were not raised in the complaint."). So I am going to **GRANT** Matney's motion for summary judgment [185].

The next question is whether Fifth Third should be given leave to amend its complaint. The Federal Rules of Civil Procedure harbor a strong preference for decisions based on the merits rather than on technicalities. *See Foman v. Davis*, 371 U.S. 178, 181 (1962). As a result, leave to amend a complaint is to be freely given absent bad faith, undue delay, or undue prejudice to the opposing party. *See* Fed. R. Civ. P. 15(a); *Cannon v. Washington*, 418 F.3d 714, 720 (7th Cir. 2005). Whether to grant a leave to

amend is left to the discretion of the trial court. For example, in *Eastern Natural Gas Corp.*

*v. Aluminum Co. of America*, 126 F.3d 996, 999 (7th Cir. 1997), the district court allowed

leave to amend a complaint 11 days before trial to add a claim of fraud. The Seventh

Circuit held that granting leave to amend under those circumstances was not an abuse

of discretion. *Id.* at 1000. To be sure, there are cases that go the other way. *See Carroll v.*

*Stryker, Corp.*, 658 F.3d 675, 684 (7th Cir. 2011); *Sanders v. Venture Stores, Inc.*, 56 F.3d 771,

774-75 (7th Cir. 1995). But this only goes to show that the issue is generally left to the

discretion of the district judge.

At the hearing, Fifth Third explained that they didn't move to amend the

Here, there has unquestionably been a long delay in this case. The current

amended complaint was filed back in February 2012. But delay is only a sufficient basis

for denial of leave to amend if the delay has caused the amending party undue

prejudice. *See Textor v. Bd. of Regents of N. Ill. Univ.*, 711 F.2d 1387, 1391 (7th Cir. 1983).

Delay is most likely to result in undue prejudice when the delay is unexplained, there

has not been any change in facts since the filing of the complaint, or when the sought-

after amendment will introduce new theories that require additional discovery. *See J.P.*

*Morgan Chase Bank, N.A. v. Drywall Service & Supply Co., Inc.*, 265 F.R.D. 341, 347 (N.D.

Ind. 2010).

At the hearing, Fifth Third explained that they didn't move to amend the

complaint because it assumed that the complaint implicitly covered all guaranties that

Matney signed and not just the first one that was later superceded. So Fifth Third

believed that amending the complaint was unnecessary. It is undisputed that Matney

signed the 2006 Guaranty, so Fifth Third thought the motion for summary judgment would dispense with the case.  As I just explained, they were wrong, but I do not see any reason to suspect that Fifth Third was acting in bad faith.  A favorable ruling on summary judgment would have saved Fifth Third, Matney, and the court, the extra time the amendment process would have taken. *See Textor*, 711 F.2d at 1391 (no undue prejudice when party waited until the court ruled on original complaint before seeking leave to amend).

I also see little chance of prejudice here.  The amendment will not change the theory of the case – Fifth Third is still alleging Matney is liable for breaching a guaranty agreement. The fact that Matney signed this guaranty has been known to the parties for some time.   Generally, when a previously unasserted claim is based on facts already known to the parties, no prejudice is likely to exist. *See Reichelt v. U.S. Army Corps of Engineers*, 969 F. Supp. 519, 523-24 (N.D. Ind. 1996).  Finally, there is no reason to believe that the amendment is likely to be futile. *See Townsel v. DISH Network L.L.C.*, 668 F.3d 967, 969 (7th Cir. 2012) (holding the standard for futility is the same standard of legal sufficiency that applies under Federal Rule of Civil Procedure 12(b)(6)).  Here, it is apparent that Fifth Third can sufficiently allege a claim under the 2006 Guaranty.

I am skeptical whether allowing the amendment will require much additional discovery.  Nonetheless, at the hearing Matney's attorney made the argument that, if leave to amend were granted, he would need discovery to ascertain Fifth Third's state of mind when it filed the suit against Matney.  I am dubious of the relevance of this

information. But out of an abundance of caution I will reopen discovery and give Matney 90 days to take whatever additional discovery he needs on Fifth Third's forthcoming amended complaint.

Therefore, Fifth Third will have until August 8, 2014 to file and amended complaint correcting the deficiency.

## COUNTERCLAIMS

Matney has asserted a number of counterclaims against Fifth Third, and Fifth Third has moved for summary judgment on these claims. I use the word "number" advisedly. Each iteration of Matney's counterclaim has become progressively more ambiguous to the point where it is genuinely difficult to determine what claims Matney is alleging. Gone are separate, numbered counts of Matney's initial counterclaim (DE 86). Gone too are the allegations setting out the elements of each claim found in Matney's proposed amended counterclaim (DE 134-1). Instead, the operative counterclaim consists of seventy-two numbered paragraphs that simply recount Fifth Third's alleged misdeeds in a freewheeling, narrative style without any attempt at organization. Matney occasionally mixes legal phrases such as "the above is negligence" in with the narrative, and one can only assume that this is to remind the reader that, somewhere amidst all the verbiage, legal claims are being advanced. This step-wise descent into pleading chaos is so striking that I can't help but suspect that the effect is deliberate: by making a host of fragmentary "claims," Matney has enough

wiggle room to be able to argue, half-plausibly, on behalf of new claims as others are dismissed.

If that was the intention, Matney has now run out of room. I read the counterclaim as making eight claims: 1) Fifth Third breached the Subordination and Stand-by Agreement; 2) Fifth Third breached the loan agreements with Double Tree; 3) Fifth Third was negligent in its dealings with Double Tree; 4) Fifth Third is liable for negligent misrepresentation; 5) Fifth Third tortiously interfered with the Settlement Agreement between Minas and Matney; 6) Fifth Third tortiously interfered with the Double Tree Operating Agreement; 7) Fifth Third tortiously interfered with the Subordination and Stand-by Agreement; and 8) Fifth Third committed constructive fraud. As I am about to explain, all eight claims fail - some as a matter of law, the others because Matney has not been able to come forward with evidence to support them. In his reply brief, Matney also argues he stated a claim for aiding and abetting breach of fiduciary duty. This claim, too, is insufficient as a matter of law, and I'll address it as well. Therefore Fifth Third's motion for summary judgment is **GRANTED** with respect to Matney's counterclaims.

### A.    Breach of Contract

Matney alleges Fifth Third breached two contracts. First, it breached the Subordination and Stand-by Agreement between Matney, David Lasco, and Fifth Third by not preventing Lasco from obtaining a judgment against Matney (DE 157 ¶¶ 58-63). Next, Fifth Third breached the loan agreements between Fifth Third and Double Tree.

15

*Id.* at ¶¶ 18-36. These breach of contract claims suffer from some rather basic shortcomings.

With respect to the Subordination Agreement, Matney can't actually point to a provision of the agreement that Fifth Third breached. The Subordination Agreement provides that Lasco "shall not demand or receive from" Matney "any part of the moneys now owing [Lasco]" until all of Matney and Double Tree's indebtedness to Fifth Third has been paid in full (DE 187-5 ¶ 1). Matney hasn't been able to point to any language requiring Fifth Third to do anything, let alone requiring it to prevent Lasco from demanding payment from Matney. In fact, the agreement expressly provides that the only consequence of Lasco's breach would be that Matney's debt to the bank would be accelerated. *Id.* at ¶ 6. As the non-moving party, Matney has the burden of coming up with evidence showing that there is a genuine issue for trial. *See Anderson*, 477 U.S. at 252. Here, he has not come forward with any evidence showing Fifth Third breached the Subordination and Stand-by Agreement.

The second breach of contract claim, breach of the loan agreements, suffers from an even more basic flaw: Matney is not even a party to the contracts. Matney claims that Fifth Third breached the loan agreements between it and Double Tree by a) not applying proceeds from lot sales to the payment of principal and interest balances on the outstanding loans and b) by helping Minas gain control of Double Tree at everyone else's expense (DE 157 ¶ 33). Under Indiana law, generally only parties to a contract have rights under the contract. *See Deckard v. Gen. Motors Corp.*, 307 F.3d 556, 561 (7th

16

Cir. 2002) (citing *OEC-Diasonics, Inc. v. Major*, 674 N.E.2d 1312, 1314-15 (Ind. 1996)). The parties to the loan agreements are Fifth Third and Double Tree (DE 184-3; DE 188-2; DE 188-8). Matney is not a party to the agreements. Nor has he pled, or come forward with any evidence suggesting, that he was a third party beneficiary of the loan agreements. Accordingly, he has no rights under the loan agreements, and his breach of contract claim fails as a matter of law.

### B. Negligence

Matney also claims Fifth Third is liable for negligence, though it is genuinely difficult to puzzle out from the counterclaim what action of Fifth Third's constituted negligence. From what I can tell, Matney alleges that Fifth Third allowed Minas to enter into loan amendments and modifications without input from Matney despite the fact that Minas did not have authority to do so (DE 157 ¶¶ 48-52). In the end, the details do not matter much because Matney's negligence claim is barred by the economic loss doctrine. As Judge Cherry ably explained in the order denying Matney leave to allege a negligence claim, Indiana's economic loss rule precludes tort liability for pecuniary loss unaccompanied by any property damage or personal injury. (DE 154 at 21-22); *Indianapolis-Marion Cnty. Pub. Library v. Charlier Clark & Linard, P.C.*, 929 N.E.2d 722, 726 (Ind. 2010) ("[A] defendant is not liable under a tort theory for any purely economic loss caused by its negligence."). Matney specifically alleges that the Fifth Third's negligence caused him to suffer "pecuniary losses" (DE 157 ¶ 52). Therefore, his negligence claim is barred by the economic loss doctrine.

### C.     Negligent Misrepresentation

The economic loss rule does not apply to claims of negligent misrepresentation, so the negligent misrepresentation claim is not barred. *See Indianapolis-Marion Cnty., Pub. Library*, 929 N.E.2d at 741 ("Negligent misrepresentation may be actionable and inflict only economic loss.").  However, Matney waived the claim by failing to cite to any evidence supporting it in his brief.

In the counterclaim, Matney alleges that Fifth Third and Minas misrepresented the number of lots in the Double Tree subdivision and misrepresented the scope and duration of Matney's Guaranty (DE 157 ¶¶ 37, 55).  Matney did not make any argument in his brief or point to any evidence in support of this claim.  When a party makes only a perfunctory argument and fails to cite any record evidence in support of a claim, summary judgment can and should be granted. *See Davis v. Carter*, 452 F.3d 686, 691-92 (7th Cir. 2006) (perfunctory arguments without proper cites to the record are deemed waived); *Ienco v. Angarone*, 429 F.3d 680, 684 (7th Cir. 2005) (finding that plaintiff waived claims by failing to develop them in response to defendant's motion for summary judgment); *E.E.O.C. v. U.S. Bell*, 2:03-cv-237-PRC, 2005 WL 1683979, at *19 (N.D. Ind. Jul. 19, 2005) (issues raised in the motion for summary judgment that are not properly responded to by the non-moving party are deemed waived).  The reasoning behind this type of waiver is that claimants must point the Court to evidence that supports their claims.  It is the litigant's responsibility to find the evidence; it is not up

to the judge to scour the record to find it. *See Pourghoraishi v. Flying J, Inc.*, 449 F.3d 751, 754, n. 1 (7th Cir. 2006). Unfortunately, Matney has abdicated that responsibility.

To be sure, Matney did make an argument in his brief for a negligent misrepresentation claim, it's just that it wasn't the claim he alleged in his counterclaim. In his response brief, Matney argues that Fifth Third committed negligent misrepresentation when, in May 2008 and January 2011, it issued Notices of Default to Double Tree and Matney regarding Double Tree's obligations to the bank (DE 192 at 42). When Fifth Third sent the notices, Matney argues, they should have known that he was no longer liable under the August 2006 Guaranty because that guaranty had been superseded by another, later guaranty. *Id.* at 42-43. This is a fine theory, but Matney did not allege any of it in his counterclaim. As I pointed out above, a party cannot amend the pleadings through briefs in opposition to summary judgment. *See Shannahan*, 82 F.3d at 781.

### D. Tortious Interference

Matney also alleges three tortious interference claims. First he alleges that Fifth Third induced the breach of the Subordination and Stand-by Agreement with Lasco (DE 157 ¶62, 69-72). Next, he alleges Fifth Third interfered with the Settlement Agreement between Matney and Minas. *Id.* at ¶¶ 56-72. Finally, he alleges Fifth Third interfered with Double Tree's Operating Agreement. *Id.* at ¶¶ 18-27, 69-72.

Matney has waived the first two claims. In his Response brief, Matney only addressed the interference with the Operating Agreement claim (DE 192 at 36-38).

Since he hasn't come forward with any argument or evidence supporting the other two claims, they are waived. *See Ienco*, 429 F.3d at 684 (plaintiff waived claims by failing to develop them in response to defendant's motion for summary judgment).

That leaves the claim that Fifth Third induced the breach of the Double Tree's Operating Agreement. Matney argues that Fifth Third tortiously interfered with the Operating Agreement in June 2007 when it accepted a Certificate of Resolution of Operating Authority from Double Tree (DE 157 ¶¶ 18-27, 69-72). The Certificate, which Matney claims is fraudulent, stated that Minas's corporation, MDRM, LLC, had complete authority to negotiate and execute loans with Fifth Third (DE 191-1). Before this, MDRM presumably had required permission from KA Enterprises, the corporation that had been controlled by Matney and Meyer, to enter into loans. I say presumably because Matney did not bother to spell this part of the claim out. This leads to the first problem with this claim — Matney has not come forward with any evidence or argument explaining what provision of the Operating Agreement was breached, and how Fifth Third's acceptance of Minas's certificate caused the breach. Again, it is not my function to "scour the record in search of evidence." *Bombard v. Fort Wayne Newspapers, Inc.*, 92 F.3d 560, 562 (7th Cir. 1996). Summary judgment is the "put up or shut up" moment in the lawsuit, when a litigant must show what evidence it has to convince a trier of fact to accept its version of events. *Johnson v. Cambridge Indus., Inc.*, 325 F.3d 892, 901 (7th Cir. 2003). Matney, once again, has neglected to produce evidence supporting key parts of his claim.

Another problem with this claim is, as with the loan agreements, Matney was not a party to the Double Tree Lake Estates Operating Agreement (DE 187-7). Only parties to a contract have rights under the contract. *See Deckard*, 307 F.3d at 561. The parties to the Operating Agreement and the addendum to the Operating Agreement are MDRM, LLC and KA Enterprises, LLC (DE 187-6 at 1; DE 187-7 at § 2.1, Ex. A). Matney managed KA Enterprises with Meyer (DE 187-2 at 2), but he has brought this claim on behalf of himself, not as a representative of KA.

Finally, Matney hasn't come forward with sufficient evidence showing Fifth Third's actions were unjustified. In order to make a tortious interference claim, Matney has to prove that Fifth Third acted without justification. *See Bragg v. City of Muncie*, 930 N.E.2d 1144, 1147 (Ind. Ct. App. 2010). This means he must establish that Fifth Third acted intentionally, without a legitimate business purpose, and the breach is malicious and exclusively directed to the injury and damage of another. *See Id.* at 1147-48 (citing *Bilimoria Computer Sys., LLC v. Am. Online, Inc.*, 829 N.E.2d 150, 156-57 (Ind. Ct. App. 2005)). A legitimate reason for the defendant's actions provides the necessary justification to avoid liability. *See Id.* at 1148. Matney has not come forward with any evidence at all suggesting that Fifth Third actions were "exclusively directed to the injury and damage" of Matney. *Id.* Moreover, Fifth Third has advanced a legitimate business reason for its actions: they were acting to prevent Double Tree from defaulting on the loans (DE 184-2 at 6). And Matney basically concedes this is correct, arguing "[a]s long as the Bank *continued to make money*, it chose to play along with Minas'

scheme . . . " (DE 192 at 38) (emphasis mine).  Since Matney has failed to produce

evidence of a genuine issue of fact for his tortious interference, Fifth Third is entitled to

judgment.

E.     **Constructive Fraud**

Matney also alleged a constructive fraud claim.  Constructive fraud arises by

operation of law when there has been a course of conduct which, if sanctioned by law,

would secure an unconscionable advantage. *See Mullen v. Cogdell*, 643 N.E.2d 390, 401

(Ind. Ct. App. 1994).  For our purposes here, what's important is that a party alleging

the existence of constructive fraud "must prove a fiduciary or fiduciary-like

relationship." *In re Rueth Dev. Co.*, 976 N.E.2d 42, 52 (Ind. Ct. App. 2012) (quoting *Cash

in a Flash, Inc. v. McCullogh*, 853 N.E.2d 533, 538 (Ind. Ct. App. 2006)).  The law is clear

that an arms-length contractual relationship, like that between a lender and a borrower,

does not create any special relationship. *See Wilson v. Lincoln Fed. Sav. Bank*, 790 N.E.2d

1042, 1047 (Ind. Ct. App. 2003); *Huntington Mortgage Co. v. DeBrota*, 703 N.E.2d 160, 167

(Ind. Ct. App. 1998); *Block v. Lake Mortgage Co., Inc.*, 601 N.E.2d 449, 452 (Ind. Ct. App.

1992) ("A fiduciary relationship does not exist between a lender and a borrower unless

certain facts exist which establish a relationship of trust and confidence between the

two.").

A fiduciary-like special relationship between a lender and borrower only exists if

(1) confidence is reposed by one party in another with resulting superiority and

influence exercised by the other; (2) the party reposing the confidence must also be in a

position of weakness, inequality, dependence or lack of knowledge; and (3) it must also be shown that the dominant party wrongfully abused this confidence by improperly influencing the weaker so as to obtain an unconscionable advantage. *See Bruno v. Wells Fargo Bank, N.A.*, 850 N.E.2d 940, 946-47 (Ind. Ct. App. 2006).

Matney argues that these circumstances are present here because he was in a position of weakness and dependence on Fifth Third, and Fifth Third abused this dependence by failing to notify Matney of the Bank's intention to enter into new loan and credit agreements with Double Tree (DE 157 ¶¶ 53-54). However, Matney's argument is foreclosed by two Indiana Court of Appeals decisions that are almost exactly on-point. In *Kruse v. National Bank of Indianapolis*, a guarantor, Kruse, sued a bank alleging constructive fraud after the bank extended the loan's maturity date without the guarantor's consent and failed to notify the guarantor of the borrower's noncompliance with the loan's reporting requirements. 815 N.E.2d 137, 140 (Ind. Ct. App. 2004). The court found that the bank did not have a fiduciary relationship with the guarantor because, as an experienced businessman, Kruse was not in a position of weakness or unequal bargaining power. *See id.* at 148. Moreover, Kruse had signed an unconditional, continuing guaranty agreement, so the bank had no duty to inform him of the borrower's condition or before extending the loan. *See id.* Likewise, *Bruno v. Wells Fargo Bank, N.A.*, featured another unconditional guarantor suing a bank for constructive fraud after the borrower took out too much money and defaulted on the loan. 850 N.E.2d 940, 943-944 (Ind. Ct. App. 2006). Again the court held that the bank

23

had no special duty because the guarantor was an experienced businessman and had signed a continuing, unlimited guaranty that authorized the borrower to take out additional loans without notice. *See id.* at 947. In this case, too, we have an ordinary lender-borrower relationship without the special circumstances creating a fiduciary relationship. Matney was an experienced businessman, experienced enough to be put in charge of day-to-day operations at Double Tree. He also signed an unconditional, continuing guaranty that didn't require his consent to, or notice of, modifications and additions to the loans. Accordingly this claim fails.

### F. Aiding and Abetting Breach of Fiduciary Duty

In a last ditch effort to salvage something of his counterclaim, Matney argues in his response brief that he also made a claim for aiding and abetting breach of fiduciary duty. Indiana courts have not yet recognized aiding and abetting breach of fiduciary duty as a cause of action. *DiMaggio v. Rosario*, 950 N.E.2d 1272, 1276 (Ind. Ct. App. 2011). But I believe they probably would because, as the Seventh Circuit has pointed out, aiding and abetting liability is not a standalone tort, but, rather, a theory of liability. *See Hefferman v. Bass*, 467 F.3d 596, 601 (7th Cir. 2006). And Indiana recognizes aiding and abetting liability for other torts, so there's reason to believe that Indiana would recognize it for a breach of fiduciary duty claim. *See, e.g., Hellums v. Raber*, 853 N.E.2d 143, 146-47 (Ind. Ct. App. 2006) (applying derivative liability rules to negligence claim.).

To succeed on his claim, Matney will have to prove that Minas breached a fiduciary duty owed to Double Tree; that Fifth Third knowingly and substantially

assisted the breach; and that Fifth Third was aware of its role when it provided the assistance. *See Hefferman*, 467 F.3d at 601; Restatement (Second) of Torts § 876.

The first problem with Matney's claim is that it's not at all clear that Matney actually pled it. Federal Rule of Civil Procedure 8(a) requires that the plaintiff make "a short plain statement of the claim" in order to state a claim for relief. Fed. R. Civ. P. 8(a)(2). The purpose of Rule 8 is to put defendants on notice. Defendants must be able to understand whether a valid claim is alleged and, if so, what it is. *See Vicom, Inc. v. Harbridge Merchant Servs., Inc.*, 20 F.3d 771, 775 (7th Cir. 1994); Matney's counterclaim failed to put Fifth Third, and the Court, on notice that he was alleging this claim. As I noted above, Matney's Second Amended Counterclaim is not short and is the farthest thing from plain. After reading through it many times, I cannot conceive of how a Defendant could have waded through the morass of scatter-shot allegations and picked out an aiding and abetting breach of fiduciary duty claim. There is no allegation that Minas ever owed a fiduciary duty to Double Tree or anyone else. No allegation that Minas ever breached a fiduciary duty, or how he breached it, or when. No allegations explaining how the bank assisted in the breach or how they knew of it.

Now, it is true that if you are *searching* for a breach of fiduciary duty claim in the complaint, you could probably find enough facts to support one. Matney alleged Minas and the bank engaged in a lot of bad acts. If you plucked an allegation from one page, and then another a few pages later, and then another after that, you could probably cobble enough facts to support a claim. But that is not good enough. "Rule 8(a)

requires parties to make their pleadings straightforward, so that judges and adverse parties need not try fish a gold coin from a bucket of mud." *United States ex rel. Garst v. Lockheed-Martin Corp.*, 328 F.3d 374, 378 (7th Cir. 2003); *Gilmour v. Gates McDonald and Co.*, 382 F.3d 1312, 1315 (11th Cir. 2004) ("liberal pleading does not require that, at the summary judgment stage, defendants must infer all possible claims that could arise out of facts set forth in the complaint."). Matney failed to adequately plead an aiding and abetting breach of fiduciary duty claim in the Second Amended Counterclaim.

Even putting aside the pleading problem, Matney's claim still fails because Matney has not come forward with evidence to support it. Matney has to show that Fifth Third "substantially assisted" Minas's breach of fiduciary duty. *Hefferman*, 467 F.3d at 601. In his response brief, Matney argues that Fifth Third assisted Minas's breach by drafting Double Tree's "fraudulent" Third Amendment to the Operating Agreement. In support of his claim, Matney's points to the draft agreement itself [DE 192-4] and an affidavit from a Fifth Third employee that was filed in the arbitration between Matney and Minas (DE 192-19). In the affidavit, the Fifth Third employee simply states that he is waiting on Matney to sign the amended Operating Agreement before he approves a loan to Fifth Third. *Id.* at 3. That's it. There is no evidence that Fifth Third had anything at all to do with drafting any agreement. That theory is just Matney's speculation, and speculation is not enough to survive summary judgment. *Bell v Dupperault*, 367 F.3d 703, 707 (7th Cir. 2004) (The nonmoving party is not entitled to the benefit of "inferences that are supported by only speculation or conjecture").

## CONCLUSION

Defendant/Counter-Plaintiff Matney's motion for summary judgment (DE 185) is **GRANTED**.

Plaintiff/Counter-Defendant Fifth Third Bank will have until **August 8, 2014** to file an amended complaint.

Plaintiff/Counter-Defendant Fifth Third Bank's motion for summary judgment (DE 183) is **GRANTED IN PART** and **DENIED IN PART**. Fifth Third Bank's motion is **GRANTED** with respect to Matney's counterclaims. The motion is **DENIED** with respect to Fifth Third's claim against Matney.

The Motions to Strike (DE 195, 199, 204, 209, 216) are **DENIED AS MOOT**.

**SO ORDERED.**

ENTERED: July 23, 2014

<u>s/ Philip P. Simon</u>
Philip P. Simon, Judge
United States District Court